LIPEZ, Circuit Judge.
 

 Fleet Mortgage, Inc. (“Fleet”), appeals from the order of the Bankruptcy Appellate Panel for the First Circuit affirming an award of damages and attorneys’ fees by the bankruptcy court to Kenneth A. Kaneb pursuant to 11 U.S.C. § 362(h).
 
 [1]
 
 We review directly the bankruptcy court’s findings of fact and conclusions of law.
 
 See Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco International, Inc.),
 
 132 F.3d 104, 107 (1st Cir.1997). The bankruptcy court found that Fleet willfully violated the automatic stay provision of the Bankruptcy Code and awarded Kaneb $25,000 for emotional distress and $18,220.68 for attorneys’ fees and costs. Fleet contests the finding that the violation of the automatic stay was willful and challenges the award of damages for emotional distress. Fleet also seeks relief from its pretrial stipulation relating to a violation of the stay. We affirm the decision of the Bankruptcy Appellate Panel (“BAP”).
 
 [2]
 

 I.
 

 In 1993, Kaneb filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code. An eighty-five year old retiree and widower, Kaneb spent the cold-weather months in Florida and the balance of the year in Massachusetts.
 
 [3]
 
 After the
 
 *267
 
 sale of his Massachusetts residence to pay secured creditors, he converted to Chapter 7 bankruptcy. Shawmut Bank, N.A. (“Shawmut”), was the original mortgagee of Kaneb’s second residence, a Florida condominium.
 

 Shawmut sought relief from the automatic stay in order to initiate foreclosure proceedings. The bankruptcy court denied Shawmut’s petition. Kaneb and Shawmut entered into settlement negotiations without success. After the failed negotiations, Shawmut forwarded Kaneb’s file to the Florida law firm of Shapiro & Fishman (“Fleet’s counsel”) to initiate foreclosure proceedings. Shawmut and Fleet merged on November 15,1995.
 

 The file forwarded from Shawmut contained the order of discharge, dated January 31, 1996, which relieved Kaneb from personal liability for all debts dischargea-ble under 11 U.S.C. § 523. The file also contained an unsigned order granting relief from the automatic stay. The attorney from Shapiro & Fishman testified that she knew Kaneb was in bankruptcy but she thought that the unsigned order for relief from the automatic stay meant that the bankruptcy judge had granted relief. Further, she erroneously believed that Fleet could initiate foreclosure proceedings lawfully because the bankruptcy court had issued an order of discharge.
 
 [4]
 
 On behalf of Fleet, Shapiro & Fishman filed a complaint for foreclosure in Florida state court on June 4,1996.
 

 Shortly after the initiation of the foreclosure, Kaneb’s attorney informed Fleet’s counsel of the automatic stay and faxed documents confirming this information. Fleet’s counsel placed Kaneb’s file on “hold” status. Six weeks later, in response to a letter from Kaneb strenuously protesting the violation of the automatic stay, Fleet’s counsel dismissed the foreclosure suit.
 

 During the six weeks that Fleet allowed the foreclosure suit to languish on “hold” status, Kaneb’s neighbors learned of the foreclosure proceeding. As a result of a foreclosure notice published in a local Florida newspaper, Kaneb received a barrage of colorful mail offering legal and investment services. These solicitations, known as “dayglow mail,” accumulated in Kaneb’s Florida mailbox. Neighbors who regularly held his mail for him when he was in Massachusetts learned of the foreclosure action. In addition, one of Kaneb’s neighbors erroneously received a solicitation addressed to Kaneb.
 

 Once Kaneb’s neighbors learned of the foreclosure suit, they began to avoid him. The condominium where Kaneb lived is a “gated community” populated by affluent retirees. Prior to the initiation of the foreclosure, he socialized frequently with his neighbors. As a widower and retiree, Kaneb’s life in Florida revolved around recreational activities within the condominium complex. After his neighbors became aware of the legal proceedings, they stopped inviting him to social outings.
 

 Kaneb brought suit for compensatory and punitive damages for willful violation of the automatic stay in the District of Massachusetts Bankruptcy Court. The court awarded him damages for emotional distress and attorneys’ fees, and the Bankruptcy Appellate Panel affirmed. On appeal, Fleet argues for the first time that there was no violation of the automatic stay despite its pretrial stipulation to the contrary. Fleet seeks relief from its pretrial stipulation and contests the sufficiency of the evidence of Kaneb’s emotional suffering.
 

 II.
 

 In examining Fleet’s pretrial stipulation, we find that Fleet stipulated to a set of uncontested facts from which the bankruptcy judge found a violation of the
 
 *268
 
 automatic stay. However, the stipulation merely recites historical facts. Nowhere in the agreement does Fleet concede that, as a legal matter, it violated the automatic stay.
 
 [5]
 
 Fleet’s request for relief from its supposed stipulation to a violation is, in reality, a request for permission to argue a legal issue that it failed to raise below. That is, Fleet raises on appeal Judge Voto-lato’s
 
 sua sponte
 
 argument in his dissent to the decision of the Bankruptcy Appellate Panel that there was no violation because the foreclosure occurred after Ka-neb’s discharge from bankruptcy and the automatic stay does not apply because Ka-neb excluded the Florida property from the bankruptcy estate by claiming it as exempt. We will not address issues raised for the first time on appeal.
 
 [6]
 

 See Teamsters Local No. 59 v. Superline Transp. Co.,
 
 953 F.2d 17, 21 (1st Cir.1992) (“If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.”). We decline to address Fleet’s “no violation” argument.
 

 Instead, we accept the conclusion that there was a violation of the automatic stay and review the trial court’s determination that this violation was willful. The trial court found that, “Despite knowing that the stay was still in force, on April 26, 1996 Shawmut forwarded its file to the law firm of Shapiro & Fishman ... for the purpose of initiating foreclosure on the property.” Fleet argues that this action was simply an innocent mistake. Further, Fleet contends that its actions were not willful because they were not taken with “flagrant or reckless disregard” for its legal obligations.
 

 Fleet cites no authority for its “flagrant or reckless disregard” standard and our research discloses none. We decline to create a new standard for willfulness. We similarly reject Fleet’s argument that it is immune from sanctions because it made a mistake’. A good faith belief in a right to the property is not
 
 *269
 
 relevant to a determination of whether the violation was willful.
 
 See Tsafaroff v. Taylor (In re Taylor),
 
 884 F.2d 478, 483 (9th Cir.1989), (quoting
 
 INSLAW, Inc. v. United States (In re INSLAW, Inc.),
 
 83 B.R. 89, 165 (Bankr.D.D.C.1988)). A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation.
 
 See Goichman v. Bloom (In re Bloom),
 
 875 F.2d 224, 227 (9th Cir.1989);
 
 see also Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.),
 
 902 F.2d 1098, 1105 (2d Cir.1990);
 
 Cuffee v. Atlantic Bus. and Community Dev. Corp. (In re Atlantic Business and Community Corp.),
 
 901 F.2d 325, 329 (3d Cir.1990). In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate.
 
 See Homer Nat’l Bank v. Namie,
 
 96 B.R. 652, 654 (W.D.La.1989). The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay.
 
 See Mitchell Const. Co., Inc. v. Smith (In re Smith),
 
 180 B.R. 311, 319 (Bankr.N.D.Ga.1995).
 

 The parties do not contest that Shawmut received actual notice of the automatic stay. Indeed, the record reveals that Shawmut unsuccessfully filed a motion for relief from the stay. After the bankruptcy court’s denial of the motion for relief, Shawmut retained the law firm of Shapiro & Fishman to initiate foreclosure proceedings. Although Fleet received notice of a violation when Kaneb’s attorney informed Shapiro & Fishman of the stay, Fleet’s counsel failed to dismiss the suit for six weeks. Under the applicable standard, Fleet’s actions constitute a willful violation of the automatic stay.
 

 III.
 

 Fleet challenges generally the sufficiency of the evidence of harm and causation for the $25,000 award for mental anguish and argues specifically that a showing of mental anguish requires physical injury or corroborating medical testimony. We decline to address Fleet’s specific arguments about evidentiary requirements because Fleet has once again waived these arguments by failing to raise them below. The BAP majority noted: “Our examination of the lengthy record shows Fleet did not question the appropriateness of the [damages award] on grounds that there was no corroborating evidence. Therefore, Fleet is precluded from raising the issue of corroboration now....” Similarly, our review of the record reveals that Fleet did not raise before the lower court the argument that a plaintiff must have suffered concomitant physical harm in order to receive damages for mental anguish.
 

 In responding to Fleet’s general challenge to the sufficiency of the damages evidence, we note that emotional damages qualify as “actual damages” under § 362(h).
 
 See Holden v. IRS (In re Holden ),
 
 226 B.R. 809, 812 (Bankr.D.Vt.1998)(“Emotional distress is an actual injury.... Legitimate human emotions are brought to bear when one’s rights are trampled on.”);
 
 In re Carrigan,
 
 109 B.R. 167, 170 (Bankr.N.C.1989)(“The debtor’s actual injury here is somewhat imprecise, but it is real—and, it is certainly the result of [the creditor’s actions].);
 
 but see In re McPeck,
 
 1991 WL 8405 at *3 (Bankr.D.Minn. Jan. 29, 1991). In the instant case, Kaneb provided specific information about the sharp decline in social invitations and outings following Fleet’s violation of the automatic stay rather than “generalized assertions” of his emotional state.
 
 See In the Matter of Robinson,
 
 228 B.R. 75, 85 (Bankr.E.D.N.Y.1998)(finding insufficient evidence of debtor’s claim of emotional harm based on unsworn and generalized assertion that debtor was con
 
 *270
 
 cerned and upset). He then testified about the emotional distress he experienced because of these changes in his life: “[I]ts very irritating. I don’t sleep well. My eating habits have changed. I—I don’t feel that ambitious about getting out and doing things and meeting people. It’s—it’s not a pleasant situation to be in.... I’m worried concerning where am I going to live.” An honest accounting of actual damages under § 362(h) must include the psychological suffering of this eighty-five year old retired widower. We affirm the bankruptcy court’s award of damages for mental anguish.
 

 IV.
 

 In his cross-appeal, Kaneb challenges the Bankruptcy Appellate Panel’s deferment of an award of attorneys’ fees pending appeal, arguing that § 362(h)’s mandate that an injured individual “shall recover actual damages” requires a prompt award of attorneys’ fees. Further, Kaneb asserts that deferment of fees discourages attorneys from filing suits to vindicate debtors’ rights under the automatic stay provision and creates a burdensome cycle of “satellite” appeals over fees. However, Kaneb cites no authority for the proposition that an award by the trial court of attorneys’ fees may not be held in abeyance under § 362(h) until the trial court’s determination that there was a willful violation of the automatic stay is affirmed on appeal. The BAP’s order was within its discretion and not contrary to law.
 

 Affirmed.
 

 [1]
 

 .Section 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys’ fees, and, in appropriate circumstances, may recover punitive damages.”
 

 [2]
 

 . Noting that appellant’s counsel had agreed to delete a disputed entry of $225 for secretarial services, the Panel reduced the total award for costs and fees to $17,995.68.
 

 [3]
 

 . Mr. Kaneb died on July 23, 1999.
 

 [4]
 

 . A discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset any [discharged] debt as a personal liability of the debtor.” 11 U.S.C. § 524(a)(2).
 

 [5]
 

 . The pretrial stipulation includes a series of uncontested facts relevant to the alleged stay violation: "On November 8, 1995, Shawmut Bank, N.A., the predecessor in interest to Fleet, filed for Relief from the Automatic Stay;” "On December 6, 1995 this Court denied the Motion for Relief from Stay with Prejudice for failure to cooperate;” "On June 4, 1996 a Complaint for foreclosure was initiated by Fleet National Bank to foreclosure [sic] on the Debtor’s property;” "On June 11, 1996 a call was made by the Plaintiff's Counsel to the Defendant’s attorneys, indicating the automatic stay was still in effect;” "Fleet's counsel placed the Debtor's file on hold on June 11, 1996 and informed Fleet of the status of the File;” "On July 23, 1996, after receipt of the facsimile transmission [from Kaneb's attorney] Fleet filed a Voluntary Dismissal and Discharge of Lis Pendens Without Prejudice.”
 

 [6]
 

 . Because we decline to review issues raised for the first time on appeal, we describe Judge Votolato's argument for the sake of completeness rather than addressing it on the merits. Judge Votolato took the view that the condominium property was no longer part of the bankruptcy estate and not subject to the automatic stay:
 

 I am unable to agree with the majority’s decision to leave undisturbed a stipulation that is invalid as a matter of law, in light of the fact that as of the date of the alleged stay violation: (1) the discharge had already entered; and (2) the debtor had claimed his condominium as exempt, thereby terminating its status as property of the estate.
 

 The BAP majority, although insisting that Fleet was bound by its supposed stipulation, concluded that whether the condominium was property of the bankruptcy estate, and hence subject to the automatic stay, depended on whether there was equity in the condominium: "When as here we have realty with little or no information as to its value, encumbrances and exemption, we cannot know whether it is valueless, outside the purview of the estate.” Kaneb asserted in a July 19, 1996, letter to Fleet that, "Since there is equity in this asset for the estate, it remains part of the bankruptcy estate and I have a claim of exemption in this asset.” Judge Votolato acknowledged that Fleet’s failure to raise the exemption issue before the bankruptcy court was "incomprehensible.”