# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

---

**BAP NO. MB 99-019**

---

**IN RE: JAMES LONG, JR.,**
**Debtor.**

---

**JAMES LONG, JR.,**
**Appellant,**

**v.**

**MATRIX CAPITAL BANK, as substituted party for**
**FEDERAL NATIONAL MORTGAGE ASSOCIATION,**
**Appellee.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Hon. Carol J. Kenner, U.S. Bankruptcy Judge)**

---

**Before**

**GOODMAN, HAINES, AND CARLO, U.S. Bankruptcy Judges**

---

**James Long, Jr., appearing *pro se.***
**Richard Forman and Forman & Forman, on brief for Appellee.**

---

**March 31, 2000**

---

Goodman, J.

James Long, Jr., the *pro se* debtor, appeals from that portion of the February 4, 1999 order of the bankruptcy court that overruled his objection to the claim of Harbor Financial.[1]

I.  BACKGROUND

Prior to the time that Mr. Long filed for relief under Chapter 13, the Longs and Harbor had a longstanding dispute regarding the amounts Harbor claimed were due pursuant to a loan modification agreement.  In addition to principal and interest, Harbor claimed that it was entitled to additional amounts necessary to fund an escrow for the payment of the Longs' insurance and real estate taxes.  The Longs disagreed.  When they made payments in the amount of principal and interest only, Harbor treated their loan as in default because there were insufficient sums to fund an escrow.

This dispute continued during Mr. Long's Chapter 13 case.  On Harbor's motion for relief from stay, the bankruptcy court found that no escrow was required by the loan modification agreement. Mr. Long was ordered to pay monthly payments of $1,889.52, which included principal and interest only.   Thereafter, Harbor filed a proof of claim asserting a pre-petition claim of $43,819.31.  Mr. Long objected.  After an evidentiary hearing, the bankruptcy court

---

[1]     As liquidating agent for Bank Five for Savings, the loan was assigned to the Federal National Mortgage Association ("FNMA"), which assigned servicing to New America Financial, Inc./Harbor Financial Mortgage, Corp.  ("Harbor").  During the pendency of this appeal, FNMA moved to have Matrix Capital Bank substituted for FNMA on the grounds that Matrix had acquired rights in the Long account from FNMA.  We allowed the substitution.  All references to Harbor herein are intended to incorporate F.N.M.A. and Matrix as successor.

sustained Mr. Long's objection in part, and denied it in part, allowing Harbor's claim as a general unsecured claim in the amount of $35,567.

## II. STANDARD OF REVIEW

This court applies the "clearly erroneous standard" of review to the facts. Fed.R.Bankr.P. 8013. Applications of law are reviewed *de novo*. In re DN Associates, 3 F.3d 512, 515 (1st Cir. 1993). The decision to admit or exclude evidence is a question of law that is subject to review only for an abuse of discretion. Palmacci v. Umpierrez, 121 F.3d 781, 792 (1st Cir. 1997).

## III. ISSUES ON APPEAL

A careful reading of Mr. Long's statement of issues[2] on appeal confirms that Mr. Long's primary complaint is that Harbor regularly rejected his tender of payments of principal and interest on the grounds that such payments were nonconforming because they

---

[2] This *pro se* debtor identifies eight issues on this appeal: 1) obstruction of justice; 2) misrepresentation of material facts; 3) actionable fraud; 4) fraud and deceit in offer and voidable contract; 5) no legally sufficient accounting or writings; 6) ignored factual payment of taxes by Debtor; 7) contract law–"mailbox rule" applies on payments mailed; and 8) no written monthly billings or accounting to the Debtor." Appellant's Brief at 3. Issue one was not raised before the bankruptcy court and cannot be raised for the first time on appeal. Fleet Mortgage Group v. Kaneb, (*In re* Kaneb), 196 F.3d 265, 268, n.6. (1st Cir. 1999). Issues two, three, four, six and seven relate to the debtor's claim that Harbor made false statements to the Town of Lexington regarding the status of the Longs' tax liability and false statements regarding the Longs' alleged obligation to maintain an escrow. To the extent relevant, these issues are addressed in the context of our review of the sufficiency of the evidence presented to the bankruptcy court. Issues five and eight relate to a specific evidentiary objection to Harbor's accounting that is addressed separately.

did not include additional sums necessary to fund an escrow for payment of real estate taxes and insurance. Mr. Long argues that since Harbor rejected his payments for principal and interest, Harbor should not be allowed to recover those sums. Mr. Long also argues that since the loan modification agreement eliminated the escrow requirement, Harbor had no right to pay real estate taxes and insurance on his behalf and Harbor should not be allowed to recover for those sums.

IV. DISCUSSION

Mr. Long's objection seeks disallowance of Harbor's claim of $ 43,819.32. Fed.R.Bankr.P. 3001(f) provides that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." If a debtor offers substantial evidence to support its objection to a claim, the claimant is required to come forward with evidence to support its claims, In re Hemingway Transport, Inc., 993 F.2d 915, 925 (1st Cir. 1993), *cert. denied,* 510 U.S. 914 (1993), and bears the burden of proving its claims by a preponderance of the evidence. In re Whet, Inc., 33 B.R. 424, 437 (Bankr. D. Mass. 1983).

In this case, the bankruptcy court put the claimant, Harbor, to its proof as follows:

> The Court: How much of the 43,000 and change is taxes? Do I have an accounting of that?
> Mr. White: You do not, but you can have.
> ...
> The Court: —and provide me and the Longs with a breakdown of the $43,819 because so far **I will say the Longs have gone a long way to**

4

> **sustain their burden of proof to rebut your proof of claim**.
> Mr. White: Understood.
> The Court: Therefore, unless you can demonstrate that you're entitled to this, you, the claimant, I'm going to sustain the objection.
> Mr. White; Well, Your Honor-
> The Court: So let's take a recess. I want you to go through the $43,819.32 and show me what the components of that are.
> Mr. White: We can do that, Your Honor.
> The Court: Have you seen a copy of that?
> Mr. White: No, Your Honor, they have not, but they will.
> The Court: Thank you. We'll take a recess.

February 4, 1999 Hearing Transcript at 52. (emphasis added).

In its pretrial statement, Harbor did not timely designate the accounting it offered in open court at the evidentiary hearing. Mr. Long has repeatedly objected that he did not have an opportunity to review and cross-examine the accuracy of that accounting. Mr. Long's objection is well founded, but we need not reverse on this issue because Mr. Long was not adversely affected. Fed.R.Bankr.P. 9005, 9017 (incorporating Fed.R.Civ.P. 61; Fed.R.Evid. 103(a)); Palmacci v. Umpierrez, 121 F.3d 781,793 (1st Cir. 1997). The bankruptcy court relied on the statements made in open court by Mr. Long and his wife, and not Harbor's accounting.

At the conclusion of the February 4, 1999 evidentiary hearing, the bankruptcy court made oral findings that Harbor paid real estate taxes for the benefit of Mr. Long in the amount of $7,000 for 1996 and $3,500 for 1997, and paid $2,393 for insurance coverage. In addition, the bankruptcy court found that Mr. Long owed Harbor $22,674 for pre-petition principal and interest,

bringing Harbor's total allowed, unsecured claim to $35,567.00. The bankruptcy court rejected Harbor's claim for attorneys' fees, late fees and disallowed a portion of the claim for real estate tax payments.[3]

Resolution of Mr. Long's objection to Harbor's claim does not turn on Harbor's proffered testimony and documents, it turns on the statements of Mr. Long and his wife. As set forth below, the findings by the bankruptcy court are not clearly erroneous and are supported by the evidence tendered by Mr. and Mrs. Long.

A. Real Estate Taxes

Harbor's accounting, as explained by Mr. Wright, showed that Harbor paid 1996 real estate taxes in the amount of $7,972.00 on August 2, 1996 and $1,274.00 in October of 1996. Harbor paid 1997 real estate taxes in the amounts of $3,049.00 and $1,527. It is undisputed that these payments were made, and it is undisputed that they were made for the benefit of the debtor. Mr. Long argues that Harbor had no right to pay the taxes and collect the funds from him, but he does not dispute the taxes were paid. Equally as important, to the extent Mr. Long offered evidence that Harbor overpaid taxes and/or was paying taxes that he had previously paid,

---

[3] *See* Transcript of Evidentiary Hearing on Debtor's Objection and Defense to Claim of Federal National Mortgage Association; Debtor's Pretrial Statement; Pretrial Statement of the Federal National Mortgage Association. ("Transcript"). We take the reference in the title to be an intent to incorporate into the record the pretrial statements of both parties. Mr. Long's pretrial statement is attached to his appendix at exhibit 13, p.1-4 and Harbor's pretrial statement is at exhibit 13, p.5-8.

the bankruptcy court deducted those amounts, *see* Transcript at 113-116, thus reaching the conclusion that Mr. Long owed Harbor $7,000 for 1996 and $3,500 for 1997.

B.  Insurance

Mr. Wright relied on Harbor's accounting to prove that Harbor paid $1,930.00 on August 1, 1996 and $463.00 on June 14, 1996 for insurance to protect its collateral.  Mr. Long admitted that there was a point at which the insurance may have lapsed, but he argued that Harbor's actions in obtaining insurance were premature. Mr. Long offered no evidence to contradict Harbor, he merely reiterated his position that Harbor was not entitled to create an escrow for payment of insurance premiums.  Mr. Long may be correct in his assertion that Harbor did not have the right to create an escrow for payment of insurance premiums, but that is not relevant given his admission that the policy lapsed.  Once the policy lapsed, Harbor was justified in obtaining insurance and attempting to recover the costs of that insurance from Mr. Long.

C.  Principal and Interest

Mr. Long admitted that there were at least twelve payments of principal and interest totaling $22,674.00 that Harbor returned to him because Harbor treated those payments as nonconforming.  He argues that he no longer owes this principal and interest because Harbor rejected his tender.  Based on Mr. Long's statements, the bankruptcy court properly calculated the outstanding pre-petition principal and interest as $22,674.  The bankruptcy court correctly rejected his legal argument as well.  There is no authority to

7

support Mr. Long's argument that Harbor's rejection of his partial tender voids the underlying obligation.

V.  CONCLUSION

For the reasons stated, the decision of the bankruptcy court is AFFIRMED.