[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10919
_____

D.C. Docket No. 1:10-cv-00736-WCO

KENNETH LODGE,
DELORES LODGE,

Plaintiffs-Appellants,

versus

KONDAUR CAPITAL CORPORATION,
MCCALLA RAYMER, LLC/MCCALLA RAYMER, ESQ.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 8, 2014)

Before HULL and BLACK, Circuit Judges, and WALTER,[*] District Judge.

HULL, Circuit Judge:

_____

[*]Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

Plaintiffs-appellants Kenneth and Delores Lodge sued defendants-appellees McCalla Raymer, LLC ("McCalla") and Kondaur Capital Corporation ("Kondaur"), claiming that they violated (1) the automatic stay in plaintiff Kenneth Lodge's bankruptcy, under 11 U.S.C. § 362, and (2) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. The plaintiffs appeal the district court's grant of summary judgment in favor of the defendants. After careful review and with the benefit of oral argument, we affirm.

## I. FACTUAL BACKGROUND

### A.    Lodges' Mortgage in 2000

In 2000, the Lodges obtained a $156,800 loan from First Franklin Financial Corporation ("First Franklin"). They signed a promissory note and executed a security deed giving First Franklin a mortgage on their property. The security deed gave First Franklin the right to foreclose on the property as a means of enforcing the Lodges' obligation to repay the loan.

### B.    Plaintiff Kenneth Lodge's Bankruptcy in 2005

Five years later, on September 15, 2005, plaintiff Kenneth Lodge filed a Chapter 13 bankruptcy petition. Pursuant to 11 U.S.C. § 362, the filing of the petition automatically stayed any act to collect the loan and to enforce any lien, such as First Franklin's mortgage. 11 U.S.C. § 362(a)(4), (6).

2

On December 18, 2008, defendant McCalla filed, on behalf of First Franklin's loan servicer, Home Loan Services, a motion for relief from the bankruptcy stay.  In the motion, McCalla asserted that Kenneth Lodge had defaulted on the promissory note and requested that the stay be lifted so that First Franklin could exercise its rights under the security deed.  The bankruptcy court never ruled on this motion.

Also on December 18, 2008, First Franklin assigned its interest in the promissory note and security deed to defendant Kondaur.  Later on in 2009, defendant McCalla, on behalf of defendant Kondaur, filed an amendment to the December 18, 2008 motion for relief from the bankruptcy stay, changing the movant's name from Home Loan Services to Kondaur, the new owner of the security deed.  The bankruptcy court never ruled on this amended motion either.

C.    **March 12, 2009 Notice of Sale**

In January 2009, defendant Kondaur submitted a foreclosure referral regarding the Lodges' property to defendant McCalla.  Then McCalla, on behalf of Kondaur, submitted a "Notice of Sale" for publication in the Rockdale Citizen, a local newspaper.

The Notice of Sale stated that Kondaur sought to foreclose on the Lodges' property to recover the amount owed under the promissory note.  The foreclosure sale was to take place on the first Tuesday of April 2009, that is, April 7, 2009.

3

The Notice of Sale was published on March 12, 2009.  That same day, McCalla requested that the local newspaper cancel the publication of the Notice of Sale.  So, the March 12, 2009 Notice of Sale was published only once and only for one day total.  The Lodges did not see the Notice of Sale at that time.

Rather, at some unspecified time after March 12, 2009, the Lodges received letters from law firms informing them that they were "about to be foreclosed."  The Lodges then discovered that the Notice of Sale had been published in the Rockdale Citizen.  A few weeks later, on April 7, 2009, the date announced in the Notice of Sale, the Lodges realized that the foreclosure sale had been canceled, and it never occurred.[1]

On January 28, 2010, Kenneth Lodge completed his Chapter 13 plan, and his debts, including the loan here, were discharged.  Given the bankruptcy court never ruled on the initial motion or the amended motion for relief from the bankruptcy stay, the stay remained in effect throughout Kenneth Lodge's bankruptcy proceedings from 2005 to 2010.

## II.  PROCEDURAL BACKGROUND

### A.    Lodges' Lawsuit filed March 12, 2010

After Kenneth Lodge received his Chapter 13 discharge, the Lodges filed a two-count complaint against defendants McCalla and Kondaur.  Count 1 claimed

---

[1]At oral argument, counsel for the Lodges conceded that, on April 7, 2009, the Lodges realized that the foreclosure sale would not occur.

4

that McCalla and Kondaur violated the automatic bankruptcy stay by causing the local newspaper to publish the March 12, 2009 Notice of Sale.  The Lodges sought damages under 11 U.S.C. § 362(k), which provides that an "individual injured by any willful violation of a stay provided [by § 362] shall recover actual damages . . . ."  11 U.S.C. § 362(k).[2]

Count 2 claimed that the defendants' publication of the Notice of Sale also violated the FDCPA, 15 U.S.C. § 1692f(6)(A) and (C).[3]

The district court addressed the Lodges' two claims separately, at different stages of the lawsuit, as outlined below.

## B.    Summary Judgment Motions on Automatic Stay Claim (Count 1)

The Lodges moved for partial summary judgment on their automatic stay claim in Count 1.  The defendants filed a summary judgment motion on that same claim.  The defendants argued that the Lodges had not shown any injury caused by the defendants' violation of the stay and therefore could not recover "actual damages" under § 362(k).

The Lodges responded that the defendants' violation of the automatic stay was, standing alone, an injury for which the Lodges could recover "actual

---

[2]The Lodges cited 11 U.S.C. § 362(h) in their complaint.  Section 362(h) was recodified into § 362(k) per the Bankruptcy Abuse Prevention Consumer Protection Act of 2005, Pub. L. No. 109-8, § 305(1)(B), 119 Stat. 23.  Accordingly, we will refer to the current section, § 362(k), as did the district court.

[3]In February 2011, the Lodges amended Count 2 of their initial complaint, and it is Count 2 of the amended complaint that is described above and at issue on appeal.

damages" under § 362(k).  The Lodges also asserted that they could recover under § 362(k) for their emotional distress.

In their affidavits, the Lodges acknowledged that they did not see the March 12, 2009 Notice of Sale in the <u>Rockdale Citizen</u> and discovered it only when they received the law firms' letters.  On April 7, 2009, the Lodges learned the foreclosure would not happen.  Thus, the maximum duration of the Lodges' concern about the possibility of foreclosure was a period from sometime after March 12, 2009 until April 7, 2009.

In support of the Lodges' claim of emotional distress, plaintiff Delores Lodge attested that, before the Lodges discovered that the foreclosure sale would not occur, her husband, Kenneth Lodge, was "unbearable."  She could not talk to him.  He did not want to listen to her.  She was "stressed out," so she visited her family doctor for stress and back pain and was prescribed medication.  She could not sleep without medication, began to sleep more with medication, and avoided her husband and children.

Plaintiff Kenneth Lodge attested that the publication of the Notice of Sale made him "furious" and a "bear to be around."  He (1) was a car salesman and was "so stressed out" that he had difficulties selling cars, (2) was unable to sleep "[f]or the entire rest of the month," (3) began having migraine headaches, and (4) had to be prescribed medication after his preexisting acid reflux worsened.  His children

and co-workers began to avoid him.  He argued with his wife.  He "began to worry what would happen to [him] next."

In ruling on the parties' summary judgment motions, the district court observed that defendants McCalla and Kondaur conceded that they willfully violated the automatic stay.  The district court determined, however, that the emotional distress injuries set forth in the Lodges' affidavits were too generalized and speculative to show an injury sufficient to support a recovery under § 362(k), and that the Lodges failed to show that any harm they suffered was a direct result of the defendants' actions as opposed to other factors.  The district court therefore granted summary judgment in the defendants' favor on the automatic stay claim and denied the Lodges' motion for partial summary judgment.

## C.    Summary Judgment Motions on FDCPA Claim (Count 2)

On May 2, 2012, the Lodges moved for summary judgment on the FDCPA claim, asserting the defendants were "debt collectors."  Initially, the Lodges' only cited evidence was McCalla's motions for relief from the stay (filed in December 2006, July 2007, and December 2008) and an amendment to one of those motions (filed on August 2009), which McCalla filed as a law firm on behalf of Home Loan Services and, later, Kondaur.

On May 29, 2012, the defendants, in response, argued that the Lodges had not shown that they were "debt collectors" under the FDCPA.

7

In June 2012, the Lodges filed a reply, arguing that the defendants were debt collectors because their websites indicated that their businesses concerned borrowers in default.  The Lodges' reply did not (1) attach screenshots of McCalla's or Kondaur's websites, (2) give the address of the websites, or (3) request the district court to take judicial notice of those websites.

Around the same time period, defendants McCalla and Kondaur filed their own motion for summary judgment, arguing that they had not violated the FDCPA.

In a Report and Recommendation ("R&R"), a magistrate judge recommended denying the Lodges' summary judgment motion and granting the defendants' summary judgment motion.  The magistrate judge determined that the Lodges (1) failed to set forth any facts whatsoever in their response to the defendants' summary judgment motion; (2) failed to meet their burden of showing, in their response to the defendants' summary judgment motion, that the defendants were debt collectors, as defined under the FDCPA and required for FDCPA liability; and (3) by relying solely on McCalla's motions seeking relief from the stay in Kenneth Lodge's bankruptcy proceeding, failed to show that the defendants were debt collectors for the purposes of their own motions for summary judgment.

The magistrate judge acknowledged that, in their June 2012 reply in support of their motion for summary judgment, the Lodges had pointed to the defendants' websites.  The magistrate judge determined, however, that the Lodges waived any

8

argument based on the websites by not presenting it in their opening summary judgment brief, thereby depriving the defendants of the opportunity to address the websites in their response.  Further, the magistrate judge would not consider the information from the websites because the Lodges did not support the information with citations to the record and did not mention the information in their "Statement of Material Facts Not In Dispute," in violation of the local rules.[4]

The Lodges filed objections to the magistrate judge's R&R, arguing that the defendants were "debt collectors" under the FDCPA.  The Lodges requested, for the first time, that the district court take judicial notice of the contents of the defendants' websites and of a document from the "Georgia Press Association Public Notice Website," purporting to show that McCalla had conducted numerous foreclosures.[5]  The Lodges asserted that these materials, if judicially noticed, would prove that the defendants were "debt collectors" under the FDCPA.

Overruling the Lodges' objections, the district court agreed with the magistrate judge that the court was not required to consider the information from the defendants' websites because the Lodges (1) presented it for the first time in

---

[4]In a footnote, the magistrate judge noted that the district court had the authority to take judicial notice of facts <u>sua sponte</u>, but the magistrate judge declined to do so.

[5]The document from the "Georgia Press Association Public Notice Website" contained numerous notices of sale from 2008 and 2009 that stated that McCalla sought to foreclose on properties of individuals who were not parties to the Lodges' lawsuit.  Several of the notices stated that McCalla was "ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT."

9

their reply brief; (2) failed to support it with citations to evidence in the record; and (3) did not present it in their "Statement of Material Facts Not In Dispute."  The district court denied the Lodges' request to take judicial notice of the defendants' websites and the document from the "Georgia Press Association Public Notice Website" because, inter alia, the Lodges did not present that evidence and argument to the magistrate judge.  The district court adopted the R&R, denied the Lodges' motion for summary judgment, and granted the defendants' motion for summary judgment.  The Lodges timely appealed.[6]

## III. AUTOMATIC STAY CLAIM (COUNT 1)

### A.    Section 362(k)

It is well established that the filing of a bankruptcy petition acts to automatically stay all efforts outside of bankruptcy to enforce a lien against a debtor's property or to collect debts from a debtor who is under the protection of the bankruptcy court.  11 U.S.C. § 362(a)(4), (6).  Unless the action comes under an exception in 11 U.S.C. § 362(b) or a party receives relief from the stay under 11 U.S.C. § 362(d), the stay generally remains in effect until the bankruptcy court

---

[6]We review a district court's summary judgment decision de novo, applying the same legal standards as those that governed the district court.  Bradley v. Franklin Collection Serv., Inc., 739 F.3d 606, 608 (11th Cir. 2014).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

10

disposes of the case. 11 U.S.C. § 362(c); see Carver v. Carver, 954 F.2d 1573, 1576 (11th Cir. 1992).

In turn, § 362(k) provides that an "individual injured by any willful violation of a stay provided [by § 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k) (emphasis added). Here, there is no dispute that the defendants McCalla and Kondaur knew that the automatic stay was in place and willfully violated the stay.[7] Rather, the issues here are (1) whether the statutory term "actual damages" encompasses emotional distress damages, and, if so, (2) the evidentiary requirements for an emotional distress claim under § 362(k).[8]

Although this Court has not yet decided these issues, four of our sister circuits have. None of these circuits have completely foreclosed an award of emotional distress damages under § 362(k). Three circuits (the First, Seventh, and

---

[7]On appeal, the Lodges do not argue that they are entitled to punitive damages under § 362(k), and thus, we do not address punitive damages.

[8]We reject the Lodges' argument, made in passing, that the defendants' violation of the automatic stay alone constitutes an injury sufficient to allow the Lodges to recover under § 362(k). Only individuals who have been injured may recover damages under § 362(k). See Garden v. Cent. Neb. Hous. Corp., 719 F.3d 899, 906 (8th Cir. 2013) ("To recover under § 362(k), the debtor must show that the creditor's violation of the automatic stay was willful and that the violation injured the debtor."); Vazquez Laboy v. Doral Mortg. Corp. (In re Vazquez Laboy), 647 F.3d 367, 371, 375-76 (1st Cir. 2011) (stating that, to be entitled to damages under § 362(k), a party must first prove an injury; then concluding that the debtors had sufficiently set forth an injury, as they had "expended court costs and attorneys' fees in order to vindicate the automatic stay"); McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 332 (1st Cir. 2004) (finding a technical violation of an automatic stay was non-compensable under § 362(h) (later recodified at § 362(k)) because the debtor had not shown that he had suffered an injury).

11

Ninth Circuits) concluded, and one (the Fifth Circuit) suggested, that "actual" damages in § 362(k) may encompass emotional distress damages.  We review our sister circuits' decisions below.

## B.     First Circuit's <u>Fleet Mortgage Group, Inc. v. Kaneb</u>

In <u>Fleet Mortgage Group, Inc. v. Kaneb</u>, the First Circuit reviewed a bankruptcy court's award of emotional distress damages under § 362(h) (later recodified at § 362(k)) to a plaintiff for an automatic stay violation.  196 F.3d 265, 269-70 (1st Cir. 1999).  The plaintiff in <u>Kaneb</u> had "provided specific information about the sharp decline in social invitations and outings following [a mortgage company's] violation of the automatic stay rather than 'generalized assertions' of his emotional state." <u>Id.</u> at 269.  The plaintiff also testified about the emotional distress he had experienced because of those changes in his life.  <u>Id.</u> at 270.

The First Circuit stated, without discussion of the text or legislative history of § 362, that "emotional damages qualify as 'actual damages' under § 362(h)," as "[a]n honest accounting of actual damages under § 362(h) must include the psychological suffering of [the plaintiff]." <u>Id.</u> at 269-70.  The First Circuit affirmed the bankruptcy court's award of damages for mental anguish, but declined to address the evidentiary requirements concerning an emotional distress claim

12

because the mortgage company had waived those arguments by failing to raise them in the bankruptcy court.  Id. at 269-70.[9]

## C.    Seventh Circuit's Aiello v. Providian Financial Corp.

In Aiello v. Providian Financial Corp., the Seventh Circuit concluded that a plaintiff, absent a financial loss, could not recover "damages for purely emotional injury" under § 362(h).  239 F.3d 878, 878, 881 (7th Cir. 2001).  The Seventh Circuit recognized that the First Circuit in Kaneb had held "that damages awarded for emotional injury caused by a willful violation of the automatic stay are 'actual damages.'"  Id. at 878.  The Seventh Circuit then said: "[n]o doubt they are; but whether their award is authorized by the statute is a separate question, one not addressed in [Kaneb], the defendant apparently having waived it."  Id.  The Seventh Circuit concluded that the purpose behind the automatic stay was financial in character, not to protect emotional peace of mind, but a plaintiff "might be permitted to piggyback a claim for damages for incidental emotional loss" to a claim for a financial loss.  Id. at 879, 881.

In reaching this conclusion, the Seventh Circuit determined that "[t]he automatic stay is primarily for the protection of the unsecured creditors as a group" and that "[t]he stay prevents . . . a race by the creditors to seize the debtor's assets,

---

[9]In United States v. Torres (In re Rivera Torres), the First Circuit determined that the language in Kaneb concerning whether § 362(h) authorized emotional distress damages was dicta because the Kaneb mortgage company had waived the argument as to whether § 362(h) authorized the award.   432 F.3d 20, 28 (1st Cir. 2005).

a race that by thwarting the orderly liquidation of those assets would yield the creditors as a group less than if they are restrained." Id. at 879.  As to secured creditors, the Seventh Circuit observed that the automatic stay blocks the "foreclosure of the creditor's security interest" until the conclusion of the bankruptcy or a grant of relief from the automatic stay.  It also noted that a security interest is not extinguished by the discharge in bankruptcy of the debtor's debts. Id.

The Seventh Circuit stated that "[b]ankruptcy is a harrowing experience, for the bankrupt but sometimes for the creditors as well." Id.  Nevertheless, the Seventh Circuit determined that "[t]he Bankruptcy Code was not drafted with reference to the emotional incidents of bankruptcy" and the protection provided by the automatic stay "is financial in character; it is not protection of peace of mind." Id.  The Seventh Circuit explained that § 362(k)'s purpose is "not to redress tort violations but to protect the rights conferred by the automatic stay." Id. at 880.

Importantly, the Seventh Circuit stressed that "[t]he law has always been wary of claims of emotional distress, because they are so easy to manufacture" and there is a considerable "potential for abuse if damages for a purely emotional injury can be awarded in suits to redress violations of the automatic stay." See id. at 880-81.  The Seventh Circuit added that it did not intend to suggest that "victims of tortious infliction of emotional distress in the course of a bankruptcy

14

proceeding are orphans of the law." Id. at 880.  Rather, the Seventh Circuit determined that a plaintiff has "the normal tort remedies against oppressive debt-collection tactics" or, as stated earlier,  may be able to "piggyback" an emotional injury claim under § 362(k) where he can also show financial loss. Id. at 881.

**D.    Fifth Circuit's <u>Young v. Repine</u>**

In <u>Young v. Repine (In re Repine)</u>, the Fifth Circuit suggested that, in some circumstances, a bankruptcy court may award emotional injury damages under § 362(k).  536 F.3d 512, 521-22 (5th Cir. 2008).  The Fifth Circuit reviewed <u>Kaneb</u> and <u>Aiello</u>.  The Fifth Circuit concluded that <u>Kaneb</u> held that (1) "emotional damages qualify as 'actual damages' under [§] 362(k)," and (2) "emotional damages awards under [§] 362(k) must be supported by 'specific information,' rather than 'generalized assertions.'" Id. at 521.  The Fifth Circuit concluded that <u>Aiello</u> "implicitly endorsed" the specificity requirement set forth in <u>Kaneb</u> and held that "emotional injury is not compensable under [§] 362(k) unless the emotional injury can be linked to some other financial injury." Id.

After reviewing these decisions, the Fifth Circuit determined that, at a minimum, the plaintiff "was required to set forth 'specific information' concerning the damages caused by his emotional distress rather than relying only on 'generalized assertions.'" Id. at 521-22.  The Fifth Circuit declined to "adopt a precise standard for whether, or under what circumstances, a court may award

15

emotional damages under [§] 362(k)" because the plaintiff had failed to make this minimal showing.  Id. at 522.

### E.    Ninth Circuit's Dawson v. Washington Mutual Bank, F.A.

Finally, in Dawson v. Washington Mutual Bank, F.A. (In re Dawson), the Ninth Circuit concluded that the term "actual damages" in § 362(h) includes emotional distress damages.  390 F.3d 1139, 1146-49 (9th Cir. 2004).  The Ninth Circuit determined that the text and context of § 362(h) were ambiguous as to whether "actual damages" included emotional distress damages.  Id. at 1146.

However, in examining the legislative history of the statute, the Ninth Circuit determined that the purpose of the automatic stay provision had both financial and non-financial goals.  Id. at 1147.  In addition to the financial goals, Congress intended the provision to create a "breathing spell" and "take[] the pressure off the debtor," which suggested "a human side to the bankruptcy process."  Id. at 1147-48 (quotation marks omitted).  Thus, Congress was concerned with the emotional and psychological toll that a violation of a stay can exact from a bankruptcy debtor.  Id. at 1148.  The Ninth Circuit decided that "[b]ecause Congress meant for the automatic stay to protect more than financial interests, it makes sense to conclude that harm done to those non-financial interests by a violation are cognizable as 'actual damages.'"  Id.  The Ninth Circuit

16

concluded that the actual damages that may be recovered by an individual injured by a willful violation of the automatic stay include emotional distress damages. Id.

In determining what standard applied to an emotional distress claim, the Ninth Circuit held that a plaintiff can recover damages for emotional distress where the plaintiff can satisfy a three-part test: (1) the plaintiff suffered "significant harm," as opposed to "[f]leeting or trivial anxiety or distress"; (2) that significant harm is "clearly establish[ed]"; and (3) there is "a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." 390 F.3d at 1149. The Ninth Circuit explained that "not every willful violation merits compensation for emotional distress" and that its three-part test is aimed at "limiting frivolous claims." Id.

The Ninth Circuit instructed that a plaintiff can satisfy the second prong of its test by offering corroborating medical evidence or non-expert testimony (for example, by family members, friends, or co-workers) about the manifestations of his mental anguish. Id. at 1149-50. The Ninth Circuit recognized that "[i]n some cases significant emotional distress may be readily apparent even without

17

corroborative evidence," such as where "the violator may have engaged in egregious conduct." Id. at 1150.[10]

## F.    Lodges' Claim

Here, we join other circuits in concluding that emotional distress damages fall within the broad term of "actual damages" in § 362(k).  We share, however, the Fifth, Seventh, and Ninth Circuits' caution that not every willful violation of the stay merits compensation for emotional distress and that a standard governing such claims is necessary.  We thus hold that, at a minimum, to recover "actual" damages for emotional distress under § 362(k), a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay.  See Dawson, 390 F.3d at 1149.

And, we agree with the district court that the Lodges have not made this showing.[11]  First, the Lodges failed to show that they suffered significant

---

[10]In Dawson, the Ninth Circuit ultimately reversed the bankruptcy court's award of emotional distress damages and remanded for reconsideration because the bankruptcy court did not have the benefit of the standards articulated for the first time in the Ninth Circuit's opinion. 390 F.3d at 1150-51.

[11]In determining that the Lodges failed to show an emotional distress injury sufficient for an award of damages under § 362(k), the district court used a test identical to the test set forth in Dawson.  And, several bankruptcy courts within the Eleventh Circuit have also used the Dawson test to determine whether a plaintiff has shown an emotional injury sufficient to recover under § 362(k).  See, e.g., Thomason v. Chestatee Cmty. Ass'n (In re Thomason), 493 B.R. 890, 903 (Bankr. N.D. Ga. 2013); Caffey v. Russell (In re Caffey), 384 B.R. 297, 309 (Bankr. S.D. Ala.

18

emotional distress.  See id.  The Lodges admit that they learned of the publication of the Notice of Sale only when they received letters from law firms informing them that they were "about to be foreclosed."  The Lodges did not file copies of those letters or even specify when they received them, rendering it impossible to determine exactly how long they held their mistaken belief that their property was to be foreclosed.  The Lodges offered only generalized evidence that they were "stressed out" and had difficulties interacting with one another and their children. Kenneth Lodge added that he had "trouble selling automobiles" and that his coworkers were avoiding him.  This generalized evidence, without any additional, specific detail, does not show that the Lodges suffered significant emotional distress due to the Notice of Sale being published for a single day, as opposed to "[f]leeting or trivial anxiety or distress."  See id.  Moreover, the Lodges admit that, by April 7, 2009, they knew that the foreclosure sale would not occur.

Further, the Lodges submitted only their affidavits and have therefore failed to corroborate their injuries in any way.  See id.  The Ninth Circuit suggested that corroborating evidence may not be necessary to prove emotional distress where the violator engaged in egregious conduct and significant emotional distress is readily apparent.  See id. at 1149-50.  But, this is not that type of case.  There is no

---

2008); In re Arnell, No. 05-12444-WHD, 2006 WL 6589025, at *6 (Bankr. N.D. Ga. Dec. 26, 2006).

19

evidence that defendants McCalla and Kondaur engaged in egregious conduct, as they canceled the publication of the Notice of Sale the same day that it ran.  There is no evidence that the defendants intended to harm the Lodges by publishing the advertisement.  Nothing else in the record makes it obvious that the Lodges suffered significant emotional distress.

In any event, the Lodges have not established a causal connection between their injuries and the violation of the automatic stay.  See id. at 1149.  Given Kenneth Lodge's multi-year bankruptcy proceedings, there is no showing of a connection between the letters and the Lodges' stress and physical maladies.  While the Lodges averred that they visited a doctor in relation to their conditions, they did not attach any evidence of these visits.  Medical evidence here would be particularly helpful in evaluating the cause of their specific conditions, as well as evidence that the Lodges had not suffered from these conditions before and how soon after the Lodges' discovery of the one-day publication of the Notice of Sale these conditions arose.

Because the Lodges failed to show an emotional injury sufficient to support a recovery of actual damages under § 362(k), the district court did not err in granting summary judgment in favor of the defendants as to the automatic stay claim.  In light of the result we reach today, we need not decide whether the

Lodges were also required to show financial or physical injury before a court could award emotional distress damages under § 362(k).[12]

## IV.  FDCPA CLAIM (COUNT 2)

The FDCPA imposes liability on "debt collectors" who fail to comply with its provisions when collecting a "debt."  15 U.S.C. § 1692k.  The FDCPA's restrictions apply only to "debt collectors."  The Lodges' complaint asserts that the defendants violated the FDCPA provision, 15 U.S.C. § 1692f(6).  A "debt collector" is defined, for the purposes of § 1692f(6), as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts [or the enforcement of security interests], or who regularly collects or attempts to collect . . . debts . . . due another . . . ."  Id. § 1692a(6); see Harris v. Liberty Cmty. Mgmt., Inc., 702 F.3d 1298, 1302 (11th Cir. 2012).  The Lodges attempted to establish that the defendants are debt collectors by reference to two sources: the defendants' websites and a

---

[12]We conclude that Marable v. Walker, 704 F.2d 1219, 1220-21 (11th Cir. 1983) (holding that damages for emotional distress "in cases of this type 'may be inferred from the circumstances as well as proved by the testimony'"), does not apply here, as it concerns damages for emotional distress in cases under the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, and the Fair Housing Act, 42 U.S.C. § 3601, et seq., not damages for emotional distress for violations of an automatic stay during the course of bankruptcy proceedings.  See Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1180, 1199 (11th Cir. 2007) (providing that emotional distress is a predictable and foreseeable consequence of discrimination and that federal courts have long found that violations of antidiscrimination statutes frequently result in emotional distress to victims).

document from the "Georgia Press Association Public Notice Website."  We analyze the district court's treatment of each of these sources in turn.

## A.      Defendants' Websites

The Lodges claimed that the defendants' websites list, <u>inter alia</u>, services, such as foreclosure services, that show that the defendants are debt collectors.  The district court, however, did not abuse its discretion in declining to take judicial notice of the contents of the defendants' websites.

Under Rule 201 of the Federal Rules of Evidence, a court "<u>may</u> take judicial notice on its own" or "<u>must</u> take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c) (emphases added).  Further, Rule 201 states that a court "<u>may</u> take judicial notice at any stage of the proceeding."  Fed. R. Evid. 201(d) (emphasis added).

Here, the Lodges first requested the district court to take judicial notice of the defendants' websites in the Lodges' objections to the magistrate judge's R&R.  Even then, the Lodges did not provide the district court with screenshots of the websites or the websites' addresses.  Without the necessary information concerning the websites, and in light of the timing of the request, the district court was not required to take judicial notice under Rule 201.

The Lodges are correct that a court has "wide discretion" to take judicial notice of appropriate adjudicative facts at any stage in a proceeding, including at

22

the summary judgment stage.  See Fed. R. Evid. 201(d); Dippin' Dots, Inc. v. Frosty Bites Distribut., LLC, 369 F.3d 1197, 1204-05 (11th Cir. 2004). Nevertheless, the taking of judicial notice of facts is "a highly limited process." Dippin' Dots, Inc., 369 F.3d at 1205 (quotation marks omitted).  "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court."  Id. (quotation marks omitted).  We do not decide here whether the contents of a website may ever be judicially noticed under Rule 201 because the Lodges wholly failed to provide the necessary information.

In any event, the district court gave an alternative, independent basis for not considering the Lodges' references to the defendants' websites.  The district court relied on its local rule, providing that the court will not consider any fact that is "set out only in the brief and not in the movant's statement of undisputed facts." LR 56.1B(1), (2)(b), NDGa.  The district court declined to consider any purported facts on the defendants' websites because those facts were not set forth in the Lodges' statement of undisputed facts.

On appeal, the Lodges have not challenged this local rule basis for the district court's decision.  Thus, the Lodges have abandoned any challenge they may have had to this alternative basis.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 682-83 (11th Cir. 2014).  Because this basis is alone sufficient for

23

the district court to reject the Lodges' argument concerning the defendants' websites, we can affirm on this basis alone and need not consider any of the Lodges' arguments addressing other bases for the district court's decision.  See id. at 683 (affirming the district court's dismissal of claims because the plaintiffs-appellants failed to challenge an independent, alternative ruling on which that dismissal was based).

## B.    "Georgia Press Association Public Notice Website" Document

The district court also did not abuse its discretion in declining to consider a document purportedly from the "Georgia Press Association Public Notice Website" that listed foreclosure advertisements for properties unrelated to the Lodges' property.  First, the Lodges never mentioned this evidence before the magistrate judge, much less argued that this evidence showed that the defendants were "debt collectors" under the FDCPA.  It was well within the district court's discretion to decline to consider it.  See Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding that a district court, in reviewing an R&R, has discretion to decline to consider a party's argument that was not first presented to a magistrate judge); see also Knight v. Thompson, 723 F.3d 1275, 1277 n.1 (11th Cir. 2013) (determining that the plaintiffs waived the argument because it was first raised in their objections to the magistrate judge's R&R, and the district court did

not consider the argument when ruling on the R&R), petition for cert. filed, (U.S. Feb. 6, 2014) (No. 13-955).

Second, this evidence was inadmissible, as the Lodges did not authenticate it. See Fed. R. Evid. 901.  The document could not be judicially noticed by the district court because the facts within it were not "generally known within the trial court's territorial jurisdiction" and could not be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  See Fed. R. Evid. 201(b).

Accordingly, we affirm the district court's order granting summary judgment in favor of McCalla and Kondaur as to the Lodges' FDCPA claim.[13]

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's orders granting summary judgment in favor of defendants McCalla and Kondaur.

**AFFIRMED.**

---

[13]The one-page Notice of Sale published in the Rockdale Citizen indicated that defendant McCalla placed the Notice of Sale and stated that McCalla was "ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT."  In the district court and on appeal, the Lodges do not argue that McCalla is a debt collector based on the Notice of Sale.  Thus, we do not address whether this single document, standing alone, is sufficient to show that McCalla is a debt collector under the FDCPA.