[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14002
_____

D.C. Docket No. 1:13-cv-00925-WKW
Bankruptcy No. 12-bkc-11045-WRS

In re:  ERIC ALLEN MCLEAN,
        DEBORAH DIANNE MCLEAN,

                                                          Debtors.
_____

GREEN POINT CREDIT, LLC,
GREEN TREE SERVICING LLC,

                                              Plaintiffs - Appellants,

versus

ERIC ALLEN MCLEAN,
DEBORAH DIANNE MCLEAN,

                                              Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(July 23, 2015)

Before ED CARNES, Chief Judge, JILL PRYOR and BLACK, Circuit Judges.

JILL PRYOR, Circuit Judge:

Green Point Credit, LLC and Green Tree Servicing LLC (collectively, "Green Tree") appeal the judgment the district court entered in its role as bankruptcy appellate court concerning an adversary proceeding that debtors Deborah and Eric McLean filed against Green Tree in the bankruptcy court. The district court affirmed the bankruptcy court's ruling that Green Tree violated the discharge injunction under 11 U.S.C. § 524(a)(2) by filing a proof of claim in the McLeans' instant bankruptcy proceeding to collect a debt that was discharged in their previous bankruptcy proceeding. The order also affirmed the bankruptcy court's award of both compensatory and non-compensatory sanctions to the McLeans.

This appeal presents a novel question: whether a creditor violates the discharge injunction under § 524(a)(2) by filing a proof of claim in a bankruptcy proceeding to collect a debt that was discharged in a previous bankruptcy proceeding. Green Tree asks us to answer this question in the negative or, in the alternative, to vacate the compensatory sanctions for lack of evidentiary foundation and the non-compensatory sanctions for being impermissibly punitive. After careful review, and with the benefit of oral argument, we conclude that Green Tree violated the discharge injunction; however, we vacate both monetary awards and

2

remand to the district court with instructions to vacate and remand to the bankruptcy court.

## I.

The McLeans have twice met Green Tree in bankruptcy court. Their first encounter began in 2006, when the McLeans listed Green Tree as an unsecured creditor in their Chapter 13 petition in the Bankruptcy Court for the Middle District of Alabama. The bankruptcy court converted the petition to a Chapter 7 petition and subsequently discharged the debt, a deficiency of $11,018.00 on a sales contract for a mobile home, in its January 2009 discharge order. Green Tree received electronic notice of the discharge.

In June 2012, the McLeans filed a second Chapter 13 petition in the same bankruptcy court. This petition did not list Green Tree as a creditor. Despite the 2009 discharge order, Green Tree filed a proof of claim in the second proceeding for a debt in the amount of $11,018.03, representing the same deficiency that Green Tree had sought to recover in the McLeans' first proceeding. The McLeans learned of this filing in a letter from the bankruptcy court informing them that their projected bankruptcy plan payments were going to double because of the filing.[1] According to the McLeans, this revised projection caused them emotional distress

---

[1] The increase was also due in part to a proof of claim erroneously filed by Medical Center Enterprise for an amount less than $1,000. The McLeans filed an adversary proceeding against Medical Center Enterprise on the same grounds as the instant action, and the parties settled before trial.

because they were unable to make the increased payments and expected to lose all their possessions as a result. The McLeans objected to the proof of claim on December 13, 2012 on the basis that the debt previously had been discharged.

On January 7, 2013, before the bankruptcy court ruled on the objection, the McLeans initiated an adversary proceeding against Green Tree with a complaint alleging that Green Tree's proof of claim violated 11 U.S.C. § 524(a)(2), which provides that a discharge order operates as an injunction against further debt collection activities by creditors. Four days after the McLeans filed their complaint, Green Tree withdrew its proof of claim. Green Tree has since acknowledged that it filed the proof of claim in error, due to the failure of its automated electronic system to recognize that the McLeans' debt had been discharged. Still, the McLeans sought to recover actual damages for the emotional distress that the proof of claim caused before it was withdrawn and sanctions befitting of Green Tree's misconduct. The bankruptcy court sustained the McLeans' objection in the bankruptcy proceeding on January 16, 2013. After a trial in the adversary proceeding, the bankruptcy court found in favor of the McLeans, ruling that Green Tree violated the discharge injunction. The bankruptcy court awarded the McLeans compensatory sanctions for their emotional distress and a non-compensatory award that it labeled "coercive

4

sanctions," which were designed to encourage Green Tree to correct any defects in its automated systems that could cause another such violation.

Green Tree appealed to the district court, which affirmed the bankruptcy court's judgment. The district court agreed with each of the bankruptcy court's conclusions but took care to address the risk that the non-compensatory sanctions, which the bankruptcy court imposed after Green Tree withdrew its offending proof of claim, might have been of a punitive, rather than coercive, nature. Finding Green Tree acted with reckless disregard of the risk of violating the discharge injunction, the district court concluded that, even if there remained no contempt that Green Tree could have corrected before the bankruptcy court imposed them, the sanctions could be upheld as punitive. This appeal followed.

## II.

"Where the district court [sitting as an appellate court] affirms the bankruptcy court's order, we review the bankruptcy court's decision." *Fisher Island Ltd. v. Solby+Westbrae Partners (In re Fisher Island Invs., Inc.)*, 778 F.3d 1172, 1189 (11th Cir. 2015). "Like the district court, we review the bankruptcy court's findings of fact for clear error and the court's conclusions of law and mixed questions of law and fact *de novo*." *Christopher v. Cox (In re Cox)*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007) (per curiam). "Although neither party submitted briefs on the issue, it is a duty of this Court to determine whether it has jurisdiction

5

over a particular matter, even if doing so raises the issue *sua sponte*.  We review

jurisdictional issues *de novo*."  *Walden v. Walker (In re Walker)*, 515 F.3d 1204,

1210 (11th Cir. 2008) (citation omitted).

## III.

As a preliminary matter, we first must address whether the bankruptcy court

had jurisdiction over the McLeans' adversary proceeding and whether we, in turn,

have jurisdiction to entertain this appeal.  Before oral argument, we raised *sua*

*sponte* the question whether the bankruptcy court acted within its jurisdiction by

enforcing the discharge injunction arising from the McLeans' previous bankruptcy

case.  It is settled that "the court that issued the injunctive order alone possesses the

power to enforce compliance with and punish contempt of that order," and this

"power to sanction contempt is jurisdictional."  *Alderwoods Grp., Inc. v. Garcia*,

682 F.3d 958, 970 (11th Cir. 2012); *see also Cox v. Zale Del., Inc.*, 239 F.3d 910,

917 (7th Cir. 2001) ("[A]ffirmative relief can be sought only in the bankruptcy

court that issued the discharge.").  The question our precedent does not answer is

how broadly we are to construe the identity of the "court" that has the power to

enforce the discharge injunction.  Although the McLeans brought the instant

bankruptcy petition in the same district as the case that gave rise to the discharge

injunction — and, incidentally, the same judge presided over both proceedings —

our concern was that the bankruptcy court might have acted beyond its jurisdiction

6

in enforcing the discharge injunction issued under a different case number.  *See*

*Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509 (9th Cir. 2002) (holding that

there is no private right of action to enforce the discharge injunction and explaining

that Congress intended to leave "enforcement to the bankruptcy judge whose

discharge order gave rise to the injunction").

We resolve our concern by recognizing that the purpose of a court's

contempt power is in part to "ensur[e] that the Judiciary has a means to vindicate

its own authority," not simply to enforce rulings in individual proceedings.  *Young*

*v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987).  The

violation of an injunction is a contempt against an entire court insofar as it flouts

the court's basic authority to preserve order and administer justice.  *See id.* at 798;

*Alderwoods Grp.*, 682 F.3d at 969-71.  Accordingly, any court — bankruptcy court

included — has inherent powers to punish contempt against it, as a means of

protecting itself as an institution.  *See Jove Eng'g, Inc. v. Internal Revenue Serv.*,

92 F.3d 1539, 1553 (11th Cir. 1996).[2]

---

[2] In *Alderwoods*, we held that the Florida bankruptcy court lacked jurisdiction to enforce the discharge injunction arising out of an order issued by the Delaware bankruptcy court.  682 F.3d at 971.  In our discussion of the jurisdictional nature of the contempt power, we noted that such a power was "equal" to and reflective of a court's power to issue an underlying order in the first place.  *Id.* at 970 (quoting *In re Debs*, 158 U.S. 564, 594-95 (1895)).  The implication is that the contempt power is vested at the same level of organization as Congress's grant of jurisdiction:  in one discrete tribunal.  Just as this reasoning dictates that one court cannot punish contempts against another, it also suggests that a court's power to punish any contempt against it transcends case numbers or the presence of individual judges and lies with the entire tribunal.

Here, we need not rely on the bankruptcy court's inherent powers to find jurisdiction because bankruptcy courts also possess a statutory contempt power. *See id.* at 1554 (acknowledging the Supreme Court's warning that inherent powers should be used sparingly, particularly when an alternate basis for sanctions is available). Congress has empowered bankruptcy courts broadly to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, 11 U.S.C. § 105(a), including sanctions to enforce the discharge injunction. *Hardy v. United States ex rel. Internal Revenue Serv. (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996). Consequently, we hold that the court that "alone possesse[d] the power to enforce compliance with" the discharge injunction here was the United States Bankruptcy Court for the Middle District of Alabama, irrespective of the case number of, or the judge who might have presided over, the prior proceeding. *See Alderwoods Grp.*, 682 F.3d at 970. The bankruptcy court therefore had jurisdiction to entertain a motion for contempt in the McLeans' second bankruptcy case for a violation of the discharge injunction from their first, and we have jurisdiction to hear the appeal.

## IV.

The threshold merits issue we must decide is whether a violation of the discharge injunction under 11 U.S.C. § 524(a)(2) occurs when a creditor files a proof of claim in a bankruptcy proceeding for a debt discharged in an earlier

8

proceeding. To answer this question, one of first impression in our circuit, we begin with the text of the statute. Finding the statutory text ambiguous, we turn to legislative history and join other circuits in concluding that § 524(a)(2) is an expansive provision designed to prevent any action that has the effect of pressuring a debtor to repay a discharged debt, even if the means of pressuring the debtor are indirect. Although other provisions in the Bankruptcy Code protect against the actual enforcement of an unenforceable proof of claim, the discharge injunction has the additional and distinct aim of preventing any form of harassment of a debtor in the first place. For this reason, which we discuss more fully below, we conclude that § 524(a)(2) prohibits filing a proof of claim for a discharged debt where the objective effect of the claim is to pressure the debtor to repay the debt.

## A.

The discharge of debt in a bankruptcy proceeding "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*." 11 U.S.C. § 524(a)(2) (emphasis added). Green Tree argues that its proof of claim for the previously discharged debt did not violate the injunction because the filing was a claim against the bankruptcy estate and not against the McLeans personally. According to Green Tree, bankruptcy's procedural protections against unenforceable claims — namely, the separate legal status of the

9

estate, a debtor's ability to object to a proof of claim, and the bankruptcy court's control over the proceeding — preclude a proof of claim from having any effect on a debtor's personal liability. At least two bankruptcy courts have adopted this view. *See Clayton v. Roundup Funding, LLC (In re Clayton)*, No. 09-03379-FLK13, 2010 WL 4008335, at *5 (Bankr. E.D. Wash. Oct. 12, 2010) (emphasizing the objection procedure and the bankruptcy court's control); *In re Surprise*, 342 B.R. 119, 122 (Bankr. N.D.N.Y. 2006) (concluding without explanation that no violation of § 524(a)(2) occurred but separately emphasizing the bankruptcy court's control in concluding no violation of automatic stay occurred).

To support this view, Green Tree analogizes the discharge injunction under § 524(a)(2) to an automatic stay on attempts outside the bankruptcy to collect a debt under 11 U.S.C. § 362, a comparable restraint on creditors that takes effect when a debtor files a bankruptcy petition and remains in effect until the end of the case.[3] *See* 11 U.S.C. § 362(a), (c)(2). Although "[t]he automatic stay prohibits debt-collection activity outside the bankruptcy proceeding, such as lawsuits in state court," we have held that "[i]t does not prohibit the filing of a proof of claim to collect a debt within the bankruptcy process," even when the debt is in fact unenforceable. *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1257, 1261-62

---

[3] The automatic stay gives a debtor "a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressure that drove him into bankruptcy." *Ellison v. Nw. Eng'g Co.*, 707 F.2d 1310, 1311 (11th Cir. 1983) (per curiam) (internal quotation marks omitted).

10

(11th Cir. 2014), *cert. denied*, __ U.S. __, 135 S. Ct. 1844 (2015). This is because the stay ensures only that the bankruptcy court is the exclusive forum in which creditors' claims are to be resolved, not that every claim will be valid. Indeed, the Bankruptcy Code explicitly contemplates that creditors may file unenforceable claims in the bankruptcy court while an automatic stay is in effect. *See* 11 U.S.C. § 502(b)(1) (recognizing that claims may be invalid "under [an] agreement or applicable law for a reason other than because such claim is contingent or unmatured" and authorizing a debtor's objection to a proof of claim on that basis). According to Green Tree, this recognition within the Bankruptcy Code that some proofs of claim will be unenforceable renders them equally inoffensive to the discharge injunction.

We have not addressed this issue directly. However, this Court and other persuasive authorities have reached conclusions about the scope of the discharge injunction and the nature and effect of a proof of claim that, together, strongly support our conclusion that Green Tree violated the discharge injunction.

B.

"As with any question of statutory interpretation, we begin by examining the text of the statute to determine whether its meaning is clear." *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc). We find § 524(a)(2)'s phrase "as a personal liability of the debtor" too ambiguous to dictate a clear result in any case

11

where a creditor makes a claim against an estate or a party other than a debtor in a way that ultimately forces the debtor to pay. *See* 11 U.S.C. § 524(a)(2). Both parties' interpretations of the phrase are reasonable and at odds with one another: a broader reading of the phrase would suggest that any action even indirectly coercing the debtor to pay is prohibited, while a more limited reading would suggest that the discharge injunction only prohibits a demand for payment or legal claim made directly against the debtor. "When ambiguity in a statute renders congressional intent unclear," and we are unable to discern such intent from the plain meaning of other statutory text, "it is appropriate to resort to extrinsic aids such as legislative history." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1205 (11th Cir. 2007). We do so now.

Given its important role in achieving the Bankruptcy Code's overall policy aim of giving a debtor a "fresh start," § 524(a)(2) is an expansive provision that is sensitive to the diversity of ways a creditor might seek to collect a discharged debt. *See Hardy*, 97 F.3d at 1388-89. Legislative history demonstrates clearly that the purpose of the statute is to "eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts." H.R. Rep. No. 95-595, at 365-66 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6321. And Congress meant no doubt whatsoever: "[Section 524] is intended to insure that once a debt is discharged, *the debtor will not be pressured in any way to repay it.* In effect, the

12

discharge extinguishes the debt, and creditors may not attempt to avoid that." *Id.* at 366 (emphasis added). Incorporating this language into their decisions, other circuits have identified "pressure" to repay a debt as the litmus test for whether the action affected the debtor's personal liability within the meaning of § 524(a)(2). *See Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) ("[The creditors'] contact with [a third party] in no way 'pressured' [the debtor] to repay any of the discharged debts."); *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1313 (10th Cir. 2008) ("[C]onduct that facially appears permissible may still violate § 524(a)(2) if its objective effect is prohibited, i.e., if it really serves to pressure the debtor to pay a discharged debt.").

It is therefore inappropriate to prioritize form over substance in deciding whether a claim operates against a debtor's personal liability. For example, courts have often concluded, relying in part on § 524(e), that an action in tort brought directly against a discharged debtor is *not* barred by the discharge injunction where the sole purpose of the action is to recover against an insurer. *See* 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."); *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) (collecting cases from other circuits). Adopting the reasoning of our sister circuits, we hold that the test for whether a creditor violates the discharge injunction under 11 U.S.C. § 524(a)(2) is whether

13

the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt, regardless of the legal entity against which the creditor files its claim.

In reaching this conclusion, we reject Green Tree's argument that procedural protections available to debtors in bankruptcy proceedings, such as the ability to object to an unenforceable proof of claim, have any bearing on whether a violation of the discharge injunction occurred. Those procedural protections have no bearing on the question because they fail to eliminate the pressure that a debtor feels to repay a discharged debt. Bankruptcy's procedural protections did not mitigate Congress's overriding interest in eliminating doubt about the debtor's freedom from discharged debts. In this regard, any comparison between the discharge injunction and an automatic stay is of no avail because a discharge is final: it marks the end of adjudication of claims against a bankruptcy estate. By contrast, in addition to protecting debtors from direct collection efforts, the automatic stay protects creditors and facilitates the distribution of a debtor's assets through the bankruptcy forum "by preventing a race for the debtor's assets" during the pendency of the bankruptcy proceeding. *Jacks v. Wells Fargo Bank, N.A. (In re Jacks)*, 642 F.3d 1323, 1328 (11th Cir. 2011). Accordingly, the Bankruptcy Code's reliance on proofs of claim to facilitate distribution of the bankruptcy estate does not amount to implicit approval of the filing of a proof of claim that

14

challenges the finality of a discharge order. *See Moore v. Comenity Capital Bank (In re Moore)*, 521 B.R. 280, 288 (Bankr. E.D. Tenn. 2014) (distinguishing the purpose of an automatic stay from that of a discharge, emphasizing the broad language of § 524(a)(2), and noting the lack of an enumerated exception for a proof of claim).

## C.

Under this prevailing interpretation of § 524(a)(2), Green Tree's filing of a proof of claim is plainly an "act[] to collect, recover or offset [the discharged] debt as a personal liability of the [McLeans]." *See* 11 U.S.C. § 524(a)(2). First, the filing was an act to collect the discharged debt: we have explained that filing a proof of claim is "the first step in collecting a debt in bankruptcy and is, at the very least, an 'indirect' means of collecting a debt." *Crawford*, 758 F.3d at 1262 (quoting the Fair Debt Collection Practices Act). Second, the proof of claim — although indirect — was an act to recover the debt "as a personal liability" of the McLeans within the meaning of § 524(a)(2) because it triggered an increase in the McLeans' projected bankruptcy plan payments. This projected increase created the kind of pressure to which the statute is sensitive; it is irrelevant that Green Tree never actually collected the discharged debt. Given this effect of Green Tree's proof of claim on the McLeans' bankruptcy, the bankruptcy court correctly concluded that Green Tree violated the discharge injunction.

V.

We now review the sanctions imposed for Green Tree's contempt in violating the discharge injunction.  Before addressing whether the district court's compensatory award was proper, we consider whether the bankruptcy court erred in imposing $50,000 in non-compensatory sanctions.  Apart from its legal argument concerning the effect of a proof of claim, Green Tree does not contest that it was in contempt.  Indeed, to find contempt, the bankruptcy court needed only to find that Green Tree was aware of the discharge injunction and intended the action that violated it, neither of which is disputed.  *See Hardy*, 97 F.3d at 1390.  Instead, the parties dispute the nature of the non-compensatory sanctions and whether they were appropriate in the light of Green Tree's withdrawal of its proof of claim prior to the adjudication of contempt.  We conclude that these sanctions were punitive in nature and that the bankruptcy court erred by failing to afford Green Tree the due process that imposing such sanctions requires.

We first address the nature of the non-compensatory sanctions.  The line between civil and criminal contempt sanctions is not always clear, in part because "conclusions about the civil or criminal nature of a contempt sanction are properly drawn[] not from the subjective intent of . . . laws and [] courts[] but from an examination of the character of the relief itself."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (citation and internal quotation marks

omitted).  "Sanctions in civil contempt proceedings may be employed for either or both of two purposes:  to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) (alteration and internal quotation marks omitted) (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986)), *cert. denied*, __ U.S. __, 134 S. Ct. 901 (2014).  The bankruptcy court and district court characterized the non-compensatory sanctions as coercive sanctions, the sole purpose of which is typically to bring an end to an ongoing contempt.  For this reason, they "cannot be any greater than necessary to ensure such compliance and may not be so excessive as to be punitive in nature." *Jove*, 92 F.3d at 1558 (internal quotation marks omitted).  Punitive sanctions, by contrast, take the form of a fixed fine and have no practical purpose other than punishment; it is immaterial to a court imposing such sanctions that a contemnor might be fully in compliance with the order in question at the time the sanctions are imposed. *See Bagwell*, 512 U.S. at 828-29.  Because punitive sanctions are for offenses already completed, they take on the character of criminal punishment and render the contempt criminal in nature. *Id.*  Keeping these differences in mind, "[i]n determining whether a sanction for contempt is coercive [rather than punitive], [we] must ask (1) whether the award directly serves the complainant

17

rather than the public interest and (2) whether the contemnor may control the extent of the award." *Hardy*, 97 F.3d at 1390 (internal quotation marks omitted).

Whether the award is coercive or punitive determines the level of process that a court owes an alleged contemnor in prosecuting the contempt. "[T]he requirements of due process in a civil contempt proceeding are flexible, varying with the circumstances of each case." *Mercer v. Mitchell*, 908 F.2d 763, 769 n.11 (11th Cir. 1990).[4] At most, due process requires only "skeletal" protections in civil contempt proceedings: a show-cause order providing notice and a hearing in which the alleged contemnor, who may be represented by counsel, can introduce evidence rebutting the allegation of contempt and testify on its own behalf. *Id.* at 767. Conversely, "[c]riminal contempt is a crime in the ordinary sense," and so due process requires more stringent protections in criminal contempt proceedings. *Bagwell*, 512 U.S. at 826 (internal quotation marks omitted). In addition to the protections a court must afford in any contempt proceeding, an alleged contemnor must also be "presumed innocent, proved guilty beyond a reasonable doubt, . . . [and] afforded a jury trial for serious contempts." *Young*, 481 U.S. at 798-99 (citations omitted); *see also* Fed. R. Crim. P. 42.

---

[4] "For example, . . . when there are no disputed factual matters that require an evidentiary hearing, the court might properly dispense with the hearing prior to finding the defendant in contempt and sanctioning him." *Mercer*, 908 F.2d at 769 n.11.

Green Tree argues that by withdrawing its proof of claim it "purge[d]" its contempt as to the McLeans and became compliant with the discharge injunction. Appellants' Br. at 29-30; *see Jove*, 92 F.3d at 1558 (citing *Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 444 (1986)). On that view, any sanctions the court imposed thereafter were punitive rather than coercive. We agree. Applying the test we adopted in *Hardy* for determining the nature of sanctions for violations of the discharge injunction, we conclude that (1) the purpose of the non-compensatory sanctions was primarily to serve the public interest, and (2) Green Tree was unable to lift the sanctions through compliance. *See Hardy*, 97 F.3d at 1390. First, both the bankruptcy court and the district court justified the sanctions in terms demonstrating that their objective was to benefit other parties beyond the McLeans. The bankruptcy court sought "to encourage Green Tree [to] take a fresh look at [its] internal procedures to ensure that they are designed to prevent violations of § 524." *McLean v. Green Point Credit LLC (In re McLean)*, No. 12-11045-WRS, 2013 WL 5963358, at *4 (Bankr. M.D. Ala. Nov. 8, 2013). Similarly, the district court concluded that non-compensatory sanctions were necessary to "coerce [Green Tree] to improve its computer system so as not to commit any more violations of the discharge injunction." *McLean v. Greenpoint Credit LLC*, 515 B.R. 841, 850 (M.D. Ala. 2014). Second, at the time the bankruptcy court issued the sanctions, Green Tree had already withdrawn its

19

proof of claim, leaving no ongoing violation of the discharge injunction for Green

Tree to rectify. As a result, Green Tree did not "carr[y] the keys of [its] prison in

[its] own pocket." *See Bagwell*, 512 U.S. at 828 (internal quotation marks

omitted). The "flat, unconditional fine" of $50,000 that the bankruptcy court

imposed was punitive. *See id.* at 829 (internal quotation marks omitted).

Having determined that the non-compensatory sanctions were punitive, we

must vacate them. There is no indication in the record that the bankruptcy court

employed the procedural protections owed to an alleged criminal contemnor.

*See Young*, 481 U.S. at 798-99. Although bankruptcy courts enjoy broad

discretion under § 105 to fashion their orders, the statute cannot abrogate an

alleged criminal contemnor's fundamental right to a fair proceeding. We therefore

direct that the case be remanded to the bankruptcy court so that it may decide how

properly to dispose of the McLeans' request for non-compensatory sanctions in the

light of Green Tree's withdrawal of its proof of claim.

Although we decline to decide the merits of the McLeans' request for this

relief, we note that, in bankruptcy as well as other contexts, courts have

"traditionally been reluctant to grant punitive damages absent some showing of

reckless or callous disregard for the law or rights of others." *Goichman v. Bloom

(In re Bloom)*, 875 F.2d 224, 228 (9th Cir. 1989); *see also Kolstad v. Am. Dental

Ass'n*, 527 U.S. 526, 548-49 (1999) (noting that, in various contexts, a punitive

award requires a party's "reckless disregard for the matter of whether its conduct was prohibited"). We interpret this reluctance as recognition that punitive sanctions are appropriate only where a party acted with sufficient notice concerning the legal import of its offending actions. *See, e.g.*, *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996). Because the bankruptcy court did not characterize the sanctions as punitive, it failed to perform any analysis pursuant to this principle. Although the district court recited the principle, it analyzed Green Tree's *mens rea* only with respect to the filing of its proof of claim, not with respect to the legal effect of filing the proof of claim vis-à-vis the discharge injunction. *See McLean*, 515 B.R. at 851 (citing *Keen v. Premium Asset Recovery Corp. (In re Keen)*, 301 B.R. 749, 755 (Bankr. S.D. Fla. 2008)). We remind the bankruptcy court of the proper standard should it endeavor to impose punitive sanctions on remand.

VI.

We now turn to the compensatory sanctions, which the bankruptcy court imposed after finding that the McLeans suffered from emotional distress as a result of Green Tree's contempt. Under § 105, bankruptcy courts may impose compensatory sanctions for actual damages that a debtor incurs as a result of a creditor's violation of the discharge injunction. *Hardy*, 97 F.3d at 1389-90. After the bankruptcy court issued its ruling, we held in another case that actual damages

21

can include emotional distress in the materially similar context of a violation of the automatic stay under § 362.[5] *See Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014). It follows, then, that bankruptcy courts generally have authority to award compensatory sanctions for emotional distress caused by a violation of the discharge injunction.

As we did in *Lodge*, we "caution that not every willful violation of the [discharge injunction] merits compensation for emotional distress and that a standard governing such claims is necessary." *Id.* Accordingly, we hold that the *Lodge* standard for imposing such damages also governs the McLeans' request for compensatory relief. To recover damages for emotional distress, "a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the [discharge injunction]." *Id.* We vacate the award of compensatory sanctions and direct the district court to instruct the bankruptcy court, upon remand, to reconsider the McLeans' request for compensatory relief in the light of *Lodge*. Once more, we express no opinion about the merits of the request for relief.

## VII.

[5] We recognize that, earlier in this opinion, we rejected a facile analogy between the discharge injunction and the automatic stay that conflated the distinct purposes of each under the Bankruptcy Code. *See supra* Part IV.B. Here, however, there is no material difference in the equitable interests a bankruptcy court must consider in imposing emotional distress damages for the violation of one provision as opposed to the other.

We conclude with an observation that the form of the instant action was improper and should be modified on remand.  "In bankruptcy, adversary proceedings generally are viewed as stand-alone lawsuits," *Dzikowski v. Boomer's Sports & Recreation Ctr. (In re Boca Arena, Inc.)*, 184 F.3d 1285, 1286 (11th Cir. 1999) (internal quotation marks omitted), and they "incorporate much of the Federal Rules of Civil Procedure."  *Fisher Island Invs.*, 778 F.3d at 1194.  The Federal Rules of Bankruptcy Procedure list ten different types of adversary proceedings, none of which is an action to enforce the discharge injunction.  *See* Fed. R. Bankr. P. 7001.  A contested matter, conversely, is any litigation resolving an "actual dispute, other than an adversary proceeding, before the bankruptcy court."  Fed. R. Bankr. P. 9014 advisory committee's note.  Indeed, Federal Rule of Bankruptcy Procedure 9020 specifically provides that "a motion for an order of contempt" is governed by Rule 9014, which relates to contested matters.  Thus, "[g]enerally speaking, civil contempt sanctions for the violation of the discharge injunction must be sought by contested matter rather than an adversary proceeding."  *Chionis v. Starkus (In re Chionis)*, No. CC-12-1501, 2013 WL 6840485, at *4 (B.A.P. 9th Cir. Dec. 27, 2013); *see Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011) (contempt proceedings are always contested matters).

23

The defect here in the form of the action is not jurisdictional,[6] but it does bear on the rights of the litigants. "[C]ontested matters are subject to less elaborate procedures specified in Rule 9014." *Fisher Island Invs.*, 778 F.3d at 1194. Further, "[a] finding of civil contempt must be based on clear and convincing evidence that a court order was violated" rather than the preponderance-of-the-evidence standard typically employed in civil actions. *Jove*, 92 F.3d at 1545 (internal quotation marks omitted). Still, we decline to hold that this defect in form amounts to reversible error, especially where, as is the case here, a defending party fails to object below. *See Chionis*, 2013 WL 6840485, at *4. Because we remand the case on other grounds, we direct the district court to instruct the bankruptcy court to issue an order converting the adversary proceeding to a contested matter before revisiting the sanctions awards in the light of this opinion.

The judgment of the bankruptcy court is **AFFIRMED** in part and **VACATED** in part, and the matter is **REMANDED** to the district court with instructions to vacate in part and remand to the bankruptcy court for further proceedings consistent with this opinion.

---

[6] Nothing in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure suggests that filing a motion for contempt in the wrong form of proceeding creates a jurisdictional problem. The Federal Rules of Bankruptcy Procedure "shall not be construed to extend or limit the jurisdiction of the courts or the venue of any matters therein." Fed. R. Bankr. P. 9030.