[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No: 17-11444

_____

D.C. Docket Nos. 2:16-cv-00510-SPC; 9:10-bkc-30383-FMD

IN RE:   ARLENE ROTH,

Debtor.

_____

ARLENE ROTH,

Plaintiff - Appellant,

versus

NATIONSTAR MORTGAGE, LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 28, 2019)

Before WILSON, BRANCH, and ANDERSON, Circuit Judges.

BRANCH, Circuit Judge:

Arlene Roth appeals the bankruptcy court's denial of her second motion for sanctions against Nationstar Mortgage, LLC ("Nationstar"). The basis of the motion was Nationstar's conduct of sending a monthly statement to Roth, which she alleges sought to collect discharged mortgage debt in violation of the bankruptcy code's prohibition on collection of such debt, 11 U.S.C. § 524. She raises two issues on appeal: (1) whether the bankruptcy court improperly made factual determinations without the benefit of an evidentiary hearing; and (2) whether Nationstar's mortgage statement was an improper attempt to collect a debt in violation of 11 U.S.C. § 524 and justifies sanctions against Nationstar. For the following reasons, we affirm the bankruptcy court's decision.

## I.

On December 22, 2010, Roth filed a voluntary petition for bankruptcy under Chapter 13 of the bankruptcy code.  On her bankruptcy schedule, Roth listed a mortgage on non-homestead property, which is at issue here.  On this schedule, she indicated she would surrender the property.  The Chapter 13 plan provided that "[s]ecured creditors, whether or not dealt with under the Plan, shall retain the liens securing such claims."  On October 3, 2011, the bankruptcy court entered an order confirming her Chapter 13 bankruptcy plan.  Subsequently, the mortgage at issue here (which was subject to the Chapter 13 plan) was transferred to Nationstar.  She

2

completed her payments under her Chapter 13 plan, and the bankruptcy court discharged her debt on June 27, 2014.  Nationstar was notified of the discharge.

In the discharge order, the bankruptcy court ordered that "the discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor."  The order, however, also stated that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged."  But even after the discharge of the mortgage debt, Nationstar did not foreclose on the property; thus, if Roth voluntarily paid the amount due, she could have retained the property.

About four months after the discharge of Roth's debt, Nationstar started sending Roth monthly statements related to her mortgage.  The statements included a disclaimer that they were not debt collection, but also included an amount due, due date, and instructions on how to send payment back to Nationstar. Roth had her attorney send a cease and desist letter, but the statements kept coming. She then filed her first motion for sanctions in bankruptcy court, alleging that the statements were improper debt collections in violation of 11 U.S.C. § 524, as well

3

as a separate civil action claiming violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e *et seq*, and the Florida Consumer Collection Practices Act (FCCPA). *Arlene Roth v. Nationstar Mortgage LLC*, No. 2:15-cv-508-FtM-38CM (M.D. Fla.). The parties resolved the first sanctions motion and first FDCPA action in a settlement.

But communication from Nationstar continued in the form of a November 18, 2015 "Informational Statement," which again contained an amount due, due date, and instructions for how to pay Nationstar, as well as a lengthy disclaimer. The full text of the disclaimer reads as follows:

> This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a demand for payment from any individual protected by the United States Bankruptcy Code. If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and is not an attempt to collect a debt. Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.

Consequently, on December 14, 2015, Roth filed a second lawsuit against Nationstar alleging the Informational Statement was an improper debt collection under the FDCPA. *Roth v. Nationstar Mortg., LLC*, No. 2:15-cv-783-FtM-29MRM, 2016 WL 3570991 at *1 (M.D. Fla. July 1, 2016). Nationstar filed a motion to dismiss that case, arguing that the Informational Statement was not sent for debt collection purposes as a matter of law, but the district court denied the

4

motion after applying the FDCPA's "least sophisticated consumer" standard. *Id.* at *5. On May 30, 2017, the parties notified the district court that they had reached a settlement in that case. Notice of Settlement, *Roth v. Nationstar Mortg., LLC*, No. 2:15-cv-783-FtM-29MRM (M.D. Fla. May 30, 2017).

Based on the same Information Statement, on December 14, 2015—the same day that she filed her second FDCPA case—Roth filed a second motion for sanctions in her bankruptcy case, which is at issue here. Roth alleged that Nationstar's communication was an attempt to collect a discharged debt in violation of the discharge order. Nationstar claimed that the statement was only informational and not a violation of § 524. After briefing, the bankruptcy court denied Roth's motion for sanctions at a hearing, and later entered an opinion and an order finding that the "informational statement" was not a debt collection attempt, and therefore was not in violation of the § 524 injunction. Roth appealed the denial of this second sanctions motion to the district court, which affirmed the bankruptcy court's opinion and rejected Roth's request to apply the FDCPA's "least sophisticated consumer" standard. *In re Roth*, 568 B.R. 139, 145 (M.D. Fla. 2017). This appeal followed.

## II.

In bankruptcy cases, this Court "sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy

5

court and employs the same standards of review as the district court." *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1315 (11th Cir. 2016) (quoting *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1189 (11th Cir. 2015)); *see also In re Gonzalez*, 832 F.3d 1251, 1253 (11th Cir. 2016), *cert. denied sub nom. Fla. Dep't of Revenue v. Gonzalez*, 137 S. Ct. 2293 (2017). When the district court affirms the bankruptcy court, we review the bankruptcy court's decision, reviewing its "factual findings for clear error and its legal conclusions *de novo*." *In re Ocean Warrior, Inc.*, 835 F.3d at 1315 (internal quotation marks and citations omitted). We review the bankruptcy court's denial for a motion for sanctions for abuse of discretion. *In re Diaz*, 647 F.3d 1073, 1082 (11th Cir. 2011).

### III.

Roth challenges (1) the bankruptcy court's substantive decision to deny her motion for sanctions, and (2) the bankruptcy court's decision to dispose of her motion for sanctions without a separate evidentiary hearing. We first articulate the legal standard Roth must meet to establish a violation of 11 U.S.C. § 524, and apply that standard to review the bankruptcy court's decision that Nationstar's communications were not a sanctionable violation of § 524. We then determine whether Roth was entitled to an evidentiary hearing in the bankruptcy court on that substantive question.

Section 524(a)(2) of the bankruptcy code provides that a discharge of debt in

6

a bankruptcy proceeding "operates as an injunction against the commencement or continuation of . . . an act . . . to collect . . . any such [discharged] debt." 11 U.S.C. § 524(a)(2).[1] This injunction is enforced through section 105, whereby the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 "grants statutory contempt powers in the bankruptcy context." *In re Hardy*, 97 F.3d 1384, 1389–90 (11th Cir. 1996) ("Therefore, § 105(a) grants courts independent statutory powers to award monetary and other forms of relief for [violations] to the extent such awards are 'necessary [or] appropriate' to carry out the provisions of the Bankruptcy Code.") (internal quotation marks and citations omitted). Together, sections 524(a)(2) and 105(a) "authorize a court to impose civil

---

[1] **11 U.S.C. § 524(a)** A discharge in a case under this title--

**(1)** voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

**(2)** operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

**(3)** operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

contempt sanctions [for attempting to collect a discharged debt] when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).[2] In this way, "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Id.* at 1799.[3]

Accordingly, we first determine whether a communication is a prohibited debt collection under section 524 by looking to "whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt." *In re McLean*, 794 F.3d 1313, 1322 (11th Cir. 2015). If so, we then evaluate whether that violation of the discharge injunction is sanctionable under section 105, by

---

[2] After we held oral argument in this case, the Supreme Court clarified in *Taggart* when contempt sanctions under § 105 are appropriate for violations of § 524.

[3] In *Taggart*, the Supreme Court explicitly disavowed our § 105 analysis from *In re Hardy* in which we held that the test "applicable to determining willfulness for violations of the discharge injunction of § 524" is if the defendant "(1) knew that the [injunction] was invoked and (2) intended the actions which violated the [injunction]. *In re Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996) (quotations omitted). The Supreme Court reasoned that

> [b]ecause most creditors are aware of discharge orders and intend the actions they take to collect a debt, this standard would operate much like a strict-liability standard. It would authorize civil contempt sanctions for a violation of a discharge order regardless of the creditor's subjective beliefs about the scope of the discharge order, and regardless of whether there was a reasonable basis for concluding that the creditor's conduct did not violate the order.

*Taggart*, 139 S. Ct. at 1803. In place of the "strict-liability standard," the Court adopted the "fair ground of doubt standard." *Id.* at 1802.

determining if "there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799.

We now turn to the substantive questions presented by this appeal: whether the Informational Statement sent by Nationstar was an improper attempt at debt collection in violation of 11 U.S.C. § 524(a)(2), and if so, whether it was a sanctionable under 11 U.S.C. § 105.

## A. 11 U.S.C. § 524(a)(2)

Roth has not met her burden of showing that the Informational Statement was an unlawful debt collection in violation of § 524; there are several bases for concluding that "the objective effect" of the Informational Statement was not "to pressure [Roth] to repay a discharged debt." *In re McLean*, 794 F.3d at 1322. As an initial matter, the disclaimer is printed in bold on the first page of the statement. It declares that it is "for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a demand for payment from any individual protected by the United States Bankruptcy Code." In case the first sentence is not clear enough, the disclaimer then repeats that if the account "has been discharged in a bankruptcy proceeding" then it is "for informational purposes only," and "is not an attempt to collect a debt." Further, the included payment coupon is marked in large lettering as "voluntary."

The fact that the statement includes an "amount due," "due date," and

9

statements about the negative escrow balance does not diminish the effect of the prominent, clear, and broadly worded disclaimer. Notably, section 524 allows for a debtor to pay back a discharged debt voluntarily. Under 11 U.S.C. § 524(f), "[n]othing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt." Roth had the option to repay the debt (the "amount due") and thereby regain the property because Nationstar had not completed a foreclosure on the property. If we accepted Roth's argument that the Informational Statement is unlawful debt collection under § 524, there would be little daylight between (1) a legitimate attempt by Nationstar to inform Roth how she could regain the property and (2) an unlawful attempt at debt collection in violation of the § 524 injunction. Instead, the statutory scheme clearly allows for Nationstar to send potentially helpful informational statements to Roth without simultaneously casting those statements as debt collection. In light of these facts, the Informational Statement sent by Nationstar was not designed to have the "objective effect" of "pressur[ing] the debtor to pay a discharged debt," *In re McLean*, 794 F.3d at 1322, and so we conclude that it was not an unlawful attempt at debt collection in violation of § 524.

Roth asks us to use a different standard to determine if Nationstar has committed a § 524 violation. In Roth's separate lawsuit, which was brought under

10

the FDCPA rather than the bankruptcy code,[4] the district court applied the

appropriate FDCPA test using the "least sophisticated consumer" standard. *Roth v.*

*Nationstar Mortg. LLC*, No. 2:15-cv-00783-FtM-29MRM, 2016 WL 3570991, at

*3 (M.D. Fla., July 1, 2016).[5] At the motion to dismiss stage, the district court in

the FDCPA case summarized its findings with respect to the Informational

Statement:

> It is true that the Informational Statement does not expressly state that
> it is "a communication sent for the purpose of collecting a debt." But,
> as just discussed, this absence is not dispositive. The Statement lists the
> total amount due, contains a payment due date, states that a late fee will
> be charged for an untimely payment, gives six possible payment
> methods, and separates out from the total amount due the amount of
> fees and charges previously assessed. That is not all. The statement
> contains an "Important Messages" box advising [Appellant] that her
> "escrow account has a negative balance," and expressly
> "recommend[ing she] make additional payments" to avoid "an increase
> in [her] monthly escrow payment." There is also a detachable "payment
> coupon," which states the total amount due and recalculates the amount
> due for a late payment.

*Roth*, 2016 WL 3570991, at *3. Based on these observations, the court determined

---

[4] The FDCPA creates a civil cause of action based on certain prohibited debt collection methods, specifically a "false, deceptive, or misleading representation or means in connection with the collection of any debt" or an "unfair or unconscionable means" of debt collection. 15 U.S.C. § 1692e–f.

[5] The FDCPA standard for determining if a communication is a debt collection is whether the statement would "mislead the least sophisticated consumer regarding the nature of her rights." *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1303 (11th Cir. 2014). "The least sophisticated consumer' is presumed to have only a "rudimentary amount of information about the world," but "it is assumed that the least-sophisticated consumer will be willing to read a collection notice with some care." *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1269 (11th Cir. 2019) (internal quotation marks, citations, and alterations omitted).

11

that Roth's FDCPA complaint "plausibly alleges that the Informational Statement was sent to induce payment on Plaintiff's mortgage debt," and was thus "related to debt collection" under the FDCPA. *Id.* at \*4.

Roth argues that the "underlying questions [of § 524 and the FDCPA] are designed to protect the same vulnerable parties from the same improper conduct" and so the FDCPA and bankruptcy code should use the same standard. Roth is asking this Court to import the "least sophisticated consumer" standard from the FDCPA into the § 524 context.

We decline to follow Roth's request.[6] This Court has never incorporated the "least sophisticated consumer" test into our § 524 analysis. And for good reason— what counts as "debt collection" under one statutory scheme is not necessarily "debt collection" under the other. *See Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1414 (2017) ("The [FDCPA] and the [Bankruptcy] Code have different purposes and structural features. The Act seeks to help consumers . . . . The Bankruptcy Code, by way of contrast, creates and maintains what we have called the delicate balance of a debtor's protections and obligations.") (citation and internal quotations marks omitted). And the Supreme Court reiterated that "civil

---

[6] The district court in Roth's FDCPA case was acting in response to Nationstar's motion to dismiss for failure to state a claim. Thus, the district court in that case did not make a finding on the merits, but rather it found only that the complaint "state[d] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

12

contempt is a severe remedy," so it follows that the burden to show contempt should be a high one. *Taggart*, 139 S.Ct. at 1802 (citation and internal quotation marks omitted). There is nothing in either statute that suggests we should evaluate potential § 524 violations using the FDCPA standard, and we find no other reason to do so.

## B. 11 U.S.C. § 105

Because we find that Nationstar's Informational Statement did not violate § 524, we do not have to consider whether sanctions would be appropriate under § 105. But even if we reached a different conclusion based on these facts and found that the issue of the § 524 violation presented a close call, we would nonetheless find that sanctions under § 105 are unavailable under the Supreme Court's recent decision in *Taggart*, which established the "no fair ground of doubt" standard. *Taggart*, 139 S. Ct. at 1799. The *Taggart* standard is a rigorous one: in order to find that sanctions are appropriate here, we would have to hold that "there is no objectively reasonable basis for concluding that [Nationstar's] conduct might be lawful." *Id.* With more than a "fair ground of doubt," *Taggart*, 139 S. Ct. at 1799, as to whether the discharge order barred Nationstar's conduct, sanctions would be inappropriate.

As we have determined that Nationstar's Informational Statement did not violate § 524, the "no fair ground of doubt" standard for § 105 is necessarily not

13

satisfied. Accordingly, the bankruptcy court's denial of Roth's motion for sanctions was not an abuse of discretion.

## C. Evidentiary Hearing

Finally, Roth argues that the bankruptcy court should have held an evidentiary hearing—despite the fact that she did not ask for one—before it made its findings concerning the Informational Statement.[7]  The crux of Roth's argument is that the bankruptcy court concluded that Roth "can hardly have thought that Nationstar was trying to collect the discharged debt," but a determination of her subjective belief required an evidentiary hearing.

In civil contempt proceedings, "when there are no disputed factual matters that require an evidentiary hearing, the court might properly dispense with the hearing prior to finding the defendant in contempt and sanctioning him." *In re McLean*, 794 F.3d at 1324 (quoting *Mercer v. Mitchell*, 908 F.2d 763, 769 n.11 (11th Cir. 1990)).

Neither party in this case requested an evidentiary hearing, and the bankruptcy court was not required to hold an evidentiary hearing *sua sponte* to inquire about Roth's subjective beliefs. The bankruptcy court had to look only to

---

[7] The FDCPA creates a civil cause of action based on certain prohibited debt collection methods, specifically a "false, deceptive, or misleading representation or means in connection with the collection of any debt" or an "unfair or unconscionable means" of debt collection. 15 U.S.C. § 1692e–f.005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (citation and internal quotation marks omitted).

the Informational Statement itself to determine "whether the *objective* effect of [the Informational Statement] is to pressure a debtor to repay a discharged debt," *McLean*, 794 F.3d at 1322 (emphasis added). It did so at length, making numerous findings about the document and determining that the statement did not constitute an unlawful attempt at debt collection under § 524.  Roth's *subjective* belief about the Informational Statement is irrelevant to the analysis, so it was not a "disputed factual matter[] that require[d] an evidentiary hearing." *In re McLean*, 794 F.3d at 1324. The bankruptcy court's statement that Roth "can hardly have thought that Nationstar was trying to collect the discharged debt" is simply the court's conclusion that the communications were not an attempt at debt collection.

Accordingly, the bankruptcy court did not err by rendering its decision without a hearing.

**AFFIRMED.**

15