[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11636
Non-Argument Calendar

_____

D.C. Docket No. 2:19-cv-00074-LGW,
Bkcy No. 2:07-bkc-20244-MJK

In re: SHARON H. SMITH,
        MARVIN B. SMITH, III,

                                                        Debtors.

_____

SHARON H. SMITH,
MARVIN B. SMITH, III,

                                                        Plaintiffs-Appellants,

versus

M. DELORES MURPHY,
CHOATE & COMPANY, P.C.,
ZACHARY B. HARRIS,
SAMUEL CHOATE,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 18, 2021)

Before JILL PRYOR, LUCK, and EDMONDSON, Circuit Judges.


PER CURIAM:


Marvin and Sharon Smith, proceeding <u>pro se</u>,[1] appeal the district court's

order affirming the bankruptcy court's denial of the Smiths' motion to enforce a

bankruptcy discharge injunction and to hold in contempt Delores Murphy and her

lawyers.  No reversible error has been shown; we affirm.


I.    <u>Background</u>


This appeal arises out of extensive litigation stemming from the Smiths'

bankruptcy proceedings and from property the Smiths owned on St. Simons Island,

---

[1] We construe liberally <u>pro se</u> pleadings.  <u>See Tannenbaum v. United States</u>, 148 F.3d 1262,
1263 (11th Cir. 1998).

2

Georgia (the "Property"). We will summarize the facts and procedural history only as necessary to provide context for our decision.[2]

The Property is located within a two-unit condominium building comprised of the Property (Unit B) and Unit A. Unit A is owned by Murphy. Both units are governed by the Enchantment by the Sea Condominium Owner's Association ("Association"). The owners of each unit are members of the Association and have voting rights.

In 2007, the Smiths filed for bankruptcy seeking to discharge over $2 million in mortgage debt on the Property. On their bankruptcy petition, the Smiths listed Countrywide Home Loans ("Countrywide") as holding two secured claims against the Property.

In 2008, Countrywide -- as servicing agent for HSBC Bank USA, N.A. ("HSBC") -- moved for relief from the automatic stay under 11 U.S.C. § 362(a). The bankruptcy court denied the motion but entered a Consent Order modifying the automatic stay to allow the bankruptcy trustee to market the Property for sale. If the Property remained unsold on 4 May 2009, the automatic stay would terminate without further hearing or order; and foreclosure proceedings could

---

[2] A more thorough description of the underlying factual and procedural history is set forth in the district court's decisions in Smith v. HSBC Bank, N.A., 616 B.R. 438 (S.D. Ga. 2020), and in Smith v. Murphy, 616 B.R. 228 (S.D. Ga. 2020).

3

commence.  In July 2009, the bankruptcy court denied the Smiths' motion to vacate the Consent Order and stated that foreclosure on the Property could proceed.

In April 2012, the bankruptcy trustee abandoned the bankruptcy estate's interest in the Property.  HSBC foreclosed on the Property in May 2015.  On 1 June 2016, the bankruptcy court entered an order discharging the Smiths' debt under Chapter 7.  The Smiths were later evicted from the Property in August 2017.

Meanwhile, in March 2015, members of the Association elected Marvin Smith as president and elected Murphy as secretary/treasurer of the Association. In July 2015 -- after the foreclosure on the Property -- Murphy filed the Association's annual registration with the Georgia Secretary of State, naming herself as CEO.

In February 2017, Murphy -- on behalf of the Association -- filed a complaint in state court seeking to enjoin the Smiths and HSBC from preventing the Association from entering the Property to inspect and to make repairs.  In an affidavit supporting her motion, Murphy purported to be the president of the Association and alleged that the Property had fallen into disrepair, was causing water damage to her unit, and that the Smiths had refused to cooperate with repair

4

efforts.  In March 2017, the state court issued a temporary restraining order ("TRO").

In April 2017, the Smiths filed in state court a petition for a TRO against Murphy; Murphy counterclaimed for private nuisance based on the Smiths' failure to maintain the Property.  Following a jury trial on the counterclaim, the state court entered final judgment in favor of Murphy and awarded damages of approximately $690,000.

In August 2017, the Smiths moved in the underlying bankruptcy action to enforce against Murphy the automatic stay under 11 U.S.C. § 362.  The Smiths alleged that Murphy had violated the automatic stay by (1) filing documents with the Georgia Secretary of State declaring herself CEO/President of the Association; (2) seeking a TRO against the Smiths; and (3) by filing a counterclaim against the Smiths in state court.

The Smiths then filed an adversary proceeding against Murphy in October 2017 in which they reasserted the same purported automatic stay violations.

The bankruptcy court denied the Smiths' August 2017 stay motion in January 2018.  The bankruptcy court later dismissed with prejudice the Smiths' adversary proceeding in June 2019.

In September 2018, the Smiths filed the motion at issue in this appeal: a motion titled "Emergency Motion for Enforcement of the Discharge Injunction and/or Automatic Stay and Motion for Contempt" ("Emergency Motion").  In their motion, the Smiths contended (for the third time) that Murphy and Murphy's lawyers violated the automatic stay by filing documents with the Georgia Secretary of State, seeking a TRO against the Smiths, and by filing a counterclaim against the Smiths.  The Smiths also alleged that Murphy and her lawyers violated the bankruptcy court's discharge injunction under 11 U.S.C. § 524 by filing and prosecuting the private nuisance counterclaim.

The bankruptcy court denied the Emergency Motion, finding no violation of the automatic stay or the discharge injunction.  The district court affirmed.

II.    Discussion

We review de novo legal conclusions of both the bankruptcy court and the district court.  See Finova Cap. Corp. v. Larson Pharmacy, Inc. (In re Optical Techs., Inc.), 425 F.3d 1294, 1299-1300 (11th Cir. 2005).  We review for clear error the bankruptcy court's factual findings.  See id. at 1300.

6

A. Automatic Stay

The Smiths first contend that Murphy and her lawyers violated the automatic stay in July 2015 by filing registration documents with the Georgia Secretary of State. By that time, however, the bankruptcy trustee had abandoned the Property; and HSBC had foreclosed on the Property. The Property was thus no longer "property of the estate" or "property of the debtor" subject to protection under the automatic stay. Nor were the Smiths -- although former owners of the Property -- still members of the Association.

The Smiths' other two asserted stay violations also lack merit. The automatic stay expired in June 2016, when the Smiths' Chapter 7 debt was discharged. Thus, no automatic stay was in effect (or could be violated) at the time of the complained-of acts in February 2017 and May 2017.

We see no error in the bankruptcy court's determination that neither Murphy nor her lawyers violated the automatic stay.

B. Discharge Injunction

7

A Chapter 7 discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).  The purpose of the discharge injunction is "to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it."  See Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313, 1321 (11th Cir. 2015) (emphasis omitted).  In determining whether a creditor has violated the discharge injunction we consider "whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt, regardless of the legal entity against which the creditor files its claim."  Id.

The record supports the bankruptcy court's determination that no violation of the discharge injunction occurred.  Neither Murphy nor her lawyers were creditors of the Smiths.  And nothing evidences that Murphy's counterclaim for private nuisance -- filed and prosecuted after the Smiths' Chapter 7 discharge -- was an attempt to recover on an already-discharged debt.

C.  Constitutional Due Process

8

On appeal, the Smiths contend they were denied their Fifth Amendment due process rights when the bankruptcy court denied their Emergency Motion without a hearing.  Contrary to the Smiths' assertion, nothing establishes that the party seeking a contempt order (as opposed to the party charged with contempt) is entitled to an evidentiary hearing.  We also reject the Smiths' conclusory allegations about due process violations stemming from adverse rulings by the bankruptcy court and the district court in the Smiths' adversary proceeding against Murphy.

AFFIRMED.